# UNITED STATES DISTRICT COURT

FILED08 JUL '25 15:48USDC-ORP

# DISTRICT OF OREGON

# PORTLAND DIVISION

Jennings, Marvin in Propria persona

**Claimant**

**v.**

Santander Consumer USA Inc.

**Respondent**

**VERFIED COMPLAINT FOR SPECIFIC PERFORMANCE DAMAGES SETTLEMENT FOR DEFAULT ADDITIONAL VIOLATIONS OF CONSUMER PROTECTION LAWS**

**Case No. 3:25-cv-01052-AB**

## FIRST AMENDED VERIFIED COMPLAINT

Comes now Marvin Jennings, a man acting in propria persona, and respectfully states as follows:

## I. INTRODUCTION

1. Plaintiff never received a cash loan or any disbursement of funds from Defendant Santander Consumer USA Inc. in connection with the transaction at issue.
2. This action arises from Defendant's continued attempts to collect an alleged debt after Plaintiff's credit instrument was accepted, monetized, and the dealer was paid in full, resulting in both the dealer and Defendant (or its assignees) being made whole, while Plaintiff remains pursued for a balance that, in fact, has already been satisfied.
3. Plaintiff seeks declaratory, injunctive, and equitable relief under Oregon and federal law, including the Fair Debt Collection Practices Act (FDCPA), the FTC Holder Rule, Oregon's Unlawful Debt Collection Practices Act (ORS 646.639), and ORS 83.820.

## II. JURISDICTION AND VENUE

4. This Court has jurisdiction under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1367 (supplemental jurisdiction).
5. Venue is proper in this District under 28 U.S.C. § 1391(b), as the events giving rise to this action occurred in Oregon and Defendant conducts business in this District.

## III. PARTIES

6. Plaintiff Marvin Jennings is a natural person residing in Oregon and brings this action in propria persona.
7. Defendant Santander Consumer USA Inc. is a Delaware corporation with its principal place of business in Texas, conducting business as a finance company in Oregon.

## IV. STATEMENT OF FACTS

8. On February 16, 2025, Plaintiff signed a Retail Installment Sales Contract ("RISC") and credit application at McLoughlin Chevrolet for a 2025 Chevrolet Trax. Both documents are "consumer credit contracts" under ORS 83.820. (Exhibits A, B)
9. On February 17, 2025, at the dealer's request, Plaintiff re-signed the RISC, adding a restrictive endorsement: "IN TRUST"." Plaintiff communicated this restriction to both the dealer and Defendant, indicating the instrument was to be used solely for settlement and credit, not as a personal loan. (Exhibit C)
10. On or about March 31, 2025, Plaintiff, acting in good faith and in full capacity as the real party in interest, tendered to Defendant an endorsed instrument constituting settlement of the alleged obligation, accompanied by written dispute and lawful demand for validation

under 15 U.S.C. § 1692g(b). This correspondence included several affidavits rebutting the presumptions made by Defendant and demanding strict proof of claim. Defendant dishonored said tender and failed to return the instrument, credit Plaintiff's account, or render a verified accounting of any lawful consideration advanced, and continued to pursue collection actions—including correspondence, credit reporting, and threats of repossession—without first fulfilling the statutory duty to validate the alleged debt, thereby operating in breach of law and commercial equity.

11. Further, on or about March 31st 2025, Plaintiff provided written notice of rescission to Defendant as permitted by 15 U.S.C. § 1635(a). Defendant failed to provide Plaintiff with the required rescission forms or material disclosures mandated by 15 U.S.C. § 1635 and Regulation Z. Because the statute provides that the right to rescind does not expire until three business days after both consummation of the transaction and delivery of the required forms and disclosures, and because Defendant failed to deliver such forms and disclosures, Plaintiff's right to rescind remained open at the time notice was given. Moreover, under ORS 73.0306, Defendant, not being a holder in due course, remains subject to Plaintiff's claims of property and possessory rights in the instrument and any proceeds derived therefrom. Pursuant to 15 U.S.C. § 1635(i)(3), Plaintiff's right of rescission is preserved as a right of recoupment under state law. Plaintiff therefore seeks rescission and recovery of all property, proceeds, and equitable relief as permitted by law.

12. Plaintiff never received a cash loan or disbursement of Defendant's funds. Instead, Defendant continued to treat the transaction as a conventional loan, demanding payment and threatening repossession.

13. Defendant's written responses (April 14–15, 2025) refused to accept Plaintiff's consumer paper or restrictive endorsement as payment, declined to provide a full accounting, and placed Plaintiff's account into Cease-and-Desist status, while continuing to report the debt to credit bureaus and threaten repossession.

14. (Exhibit C) On April 16, 2025, Plaintiff filed a UCC-1 Financing Statement and a Notice of Claim in Clark County, WA (Instrument #6243481), asserting entitlement to the instrument and its proceeds. (Exhibit I)

15. According to the SDART 2025-1 Final Prospectus (public SEC filing) (Exhibit J):

   - "Santander Consumer USA Inc. (SC) is the originator of the receivables."
   - "SC sells the receivables to the depositor, Santander Drive Auto Receivables LLC."
   - "The depositor then sells those receivables to the issuing entity, SDART 2025-1 Trust."
   - "SC will not have any legal or beneficial ownership interest in the receivables after their sale to the depositor and the trust."
   - "The notes are payable solely from the assets of the issuing entity."
   - "Investors will have no recourse to the depositor or originator in the event of shortfall."
   - "The receivables... are primarily obligations of subprime obligors who are individuals purchasing vehicles for personal, family, or household purposes."
   - "Overcollateralization is the amount by which the pool balance of receivables exceeds the aggregate principal amount of the notes."

- "Excess spread represents the difference between the interest and other income received and the total payments due to noteholders."

16. The SDART 2025-1 Prospectus confirms that after assignment and sale to the trust, Santander "will not have any legal or beneficial ownership interest in the receivables," but continues to act as servicer. The notes are obligations of the trust only, not Santander, and investors have no recourse to Santander or the depositor.
17. Upon information and belief, the dealer was paid in full for the RISC, Santander then sold or securitized the receivable, and proceeds were retained by Santander and/or the trust. Both the dealer and Santander (and the trust) have been made whole, while Plaintiff is still pursued for payment on a debt that has already been satisfied.
18. As a result, Defendant's continued collection efforts target a "phantom debt"—a debt that has already been satisfied or never existed—contrary to Oregon's Unlawful Debt Collection Practices Act (ORS 646.639) and the FDCPA, which prohibit collection of debts not owed, double recovery, or misrepresentation of the amount or status of a debt.
19. Plaintiff has suffered actual harm, including ongoing liability, threats of repossession, negative credit reporting, and emotional distress.
20. As a result of Defendant's continued reporting of an outstanding balance after Plaintiff's rescission and dispute, Plaintiff's credit score dropped by 52 points after May 14, 2025. This drop evidences actual harm and ongoing reputational and financial injury caused by Defendant's actions. (Exhibit K: Credit Report Screenshot)

## V. CHALLENGE TO ASSIGNMENT, AUTHORITY, AND RIGHT TO COLLECT

25. Plaintiff has repeatedly and in writing demanded that Defendant provide proof of a perfected assignment of the RISC, evidence of authority to collect, and documentation of any cash flow or consideration advanced by Defendant in connection with the alleged debt.

26. Defendant has failed to respond to these lawful demands, in violation of Oregon's Unlawful Debt Collection Practices Act (ORS 646.639), which requires debt collectors and debt buyers to provide, upon request, documentation establishing the right to collect and the chain of assignment.

27. Under 16 CFR 433.2 (FTC Holder Rule) and ORS 83.820, Defendant is not a holder in due course and is subject to all claims and defenses Plaintiff may assert, including lack of consideration, improper assignment, or lack of authority to collect.

28. A mere copy of the RISC, without a complete and verified chain of assignment and proof of authority, is insufficient under Oregon law to establish Defendant's standing to enforce or collect the alleged debt.

29. Defendant's ongoing silence and failure to provide the requested documentation is evidence of non-compliance with statutory duties and supports Plaintiff's claims of unlawful and phantom debt collection. While Oregon law does not automatically treat non-response as "tacit consent," the lack of response is circumstantial evidence of Defendant's inability or unwillingness to prove its authority, and may be considered by the Court in assessing statutory violations and bad faith.

30. Plaintiff asserts that, as a result of Defendant's failure to provide proof of assignment and authority, Defendant lacks standing to enforce the alleged obligation and is engaging in collection practices prohibited by Oregon and federal law.

## VI. CLAIMS FOR RELIEF

### CLAIM I – VIOLATION OF FDCPA (15 U.S.C. § 1692 et seq.)

31. Defendant is a "debt collector" as defined by 15 U.S.C. § 1692a(6) because it regularly collects debts owed to others, and acquired Plaintiff's account after origination.

32. Defendant violated 15 U.S.C. § 1692e by:

- Making false, deceptive, or misleading representations regarding the character, amount, or legal status of the alleged debt, including asserting a balance that has already been satisfied or is not owed.
- Failing to disclose required information and misrepresenting its authority to collect.

33. Defendant violated 15 U.S.C. § 1692g(b) by:

- Failing to provide Plaintiff, upon written request and dispute, with the required validation and verification of the alleged debt, including a copy of the original contract, a detailed accounting, and proof of authority to collect.
- Continuing collection efforts after receiving Plaintiff's written dispute and before providing such validation.

### CLAIM II – HOLDER RULE/ORS 83.820

34. The RISC is a non-negotiable consumer credit contract under ORS 83.820. Defendant, as assignee and servicer, is subject to all claims and defenses Plaintiff could assert against the dealer, including:

- Failure to disclose that the dealer was paid in full at assignment and that Plaintiff's obligation was satisfied;
- Retention of proceeds from the monetization or securitization of the RISC without crediting Plaintiff's account or returning surplus value.

**CLAIM III – VIOLATION OF OREGON UTPA (ORS 646.605 et seq.)**

35. Defendant's conduct constitutes unlawful trade practices under ORS 646.639 by:

- Attempting to collect a debt not owed or already satisfied;
- Failing to provide a full and verified accounting upon Plaintiff's written demand;
- Threatening repossession and negative credit reporting on a debt that has already been satisfied through assignment and payment to the dealer;
- Causing Plaintiff ascertainable loss, including damage to credit, emotional distress, and risk of losing the vehicle.

**CLAIM IV – CONSTRUCTIVE TRUST/UNJUST ENRICHMENT**

36. Defendant has been unjustly enriched by retaining proceeds from the monetization of Plaintiff's credit instrument while continuing to demand payment from Plaintiff, resulting in double recovery and the enforcement of a phantom debt. Equity requires imposition of a constructive trust over all proceeds derived from Plaintiff's credit instrument and any funds collected in excess of lawful consideration.

**VII. PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests:

A. Declaratory judgment that Defendant failed to perform as instructed on Plaintiff's credit instrument and that Plaintiff retains entitlement to any proceeds derived from the instrument;

B. Specific performance requiring Defendant to provide a complete accounting of all proceeds derived from Plaintiff's credit instrument and to credit Plaintiff's account accordingly;

C. Injunctive relief barring repossession pending resolution of this matter;

D. Actual and statutory damages under 15 U.S.C. § 1692k and ORS 646.638;

E. Equitable restitution and disgorgement of unjust profits;

F. Attorneys' fees and costs as permitted by law;

G. All other relief the Court deems just and proper.

## VIII. VERIFICATION

I, Marvin Jennings, declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 8 day of July, 2025.

"in trust"

Marvin Jennings, in propria persona

13215 SE Mill Plain Blvd, Suite C8-413

Vancouver, Washington 98684

Without the United States

ALL RIGHTS RESERVED – NO WAIVER

## IX. EXHIBITS

- Attachment A – Restricted Endorsement RISC
- Attachment B – Buyer's Order
- Attachment C – DMV/VITU Copy

- Attachment D – Conditional Acceptance and Proof of Claim
- Attachment E – Affidavit of Ledger
- Attachment F – Notice of Rescission
- Attachment G – Notice of Classification and Objection
- Attachment H – Notice of Claim Correspondence UCC, County record
- Attachment I – SDART 2025-1 Prospectus (SEC Filing)
- Attachment J – Credit Report and Screenshot (showing 52-point drop)
- Attachment K – Santander letter dated April 14th 2025

**USPS Certified Mail Tracking:9589 0710 5270 1509 9025 33**

FORWARD TO: LEGAL DEPARTMENT

# AFFIDAVIT OF MAILING

**State of Washington**
**County of Clark**

I, Marvin Jennings, hereinafter "Affiant," being first duly sworn, declare under penalty of perjury under the laws of the United States of America and the State of Washington that the following is true, correct, and complete to the best of my knowledge:

I am over the age of eighteen (18), competent to testify, and the author and originator of the enclosed documents.

On this 7th, May, 2025, I personally assembled, sealed, and deposited into the United States Postal Service the following titled packet:

**Final Notice of Claim, Demand to Cease Enforcement, and Equitable Abatement**, including:

1. ATTATCHEMNT A- **COPY OF THE RESTRICTED ENDORSEMENT RISC**
2. ATTATCHEMNT B- **COPY OF BUYERS ORDER**
3. ATTATCHEMNT C- **COPY OF VITU OR DMV COPY**
4. ATTATCHEMNT D- **COPY OF CONDITIONAL ACCEPTANCE & PROOF OF CLAIM**
5. ATTATCHEMNT E- **AFFIDAVIT OF LEDGER**
6. ATTATCHEMNT F- **NOTICE OF RESCISSION**
7. ATTATCHEMNT G- **NOTICE OF CLASSIFICATION AND OBJECTION**
8. ATTATCHEMNT H- **COPY OF NOTICE OF CLAIM CORRESPONDANCE**
9. ATTATCHEMNT J- **VERIFIED CLAIM FOR SPECIFIC PERFORMANCE**
10. ATTATCHEMNT K- **FINAL NOTICE OF CLAIM, NOTICE TO CEASE ENFORCEMENT, AND EQUITABLE ABATEMENT**

Said packet was sent via Certified Mail with tracking number:
**USPS Certified Mail #: 9589 0710 5270 1509 9025 33**

Properly addressed to:

**Santander Consumer USA, Inc.**
Attn: Legal Department
P.O. Box 961245
Fort Worth, TX 76161-0244

4. This mailing constitutes lawful and timely notice of dishonor, claim for settlement, and administrative record of good faith. If enforcement continues without lawful rebuttal, the contents of this notice will be submitted into judicial or administrative proceedings as prima facie evidence of Santander's dishonor and commercial default.

**FURTHER AFFIANT SAYETH NOT.**

Executed this 7-th day of May, 2025.

By: M. Jennings In trust ARR.
**Marvin Jennings**, in propria persona
c/o 13215 SE Mill Plain Blvd, Suite C8-413
Vancouver, Washington [98684]
Without the United States
All rights reserved – no waiver

**JURAT**

State of Washington
County of Clark

Subscribed and sworn to before me this _____ day of ____________, 2025, by Marvin Jennings, known to me or satisfactorily proven to be the signer of the foregoing instrument.

Signature of Notary Public: ___________________________
Printed Name: ______________________________________
My Commission Expires: ______________________________.

(Seal)

Final Notice of Claim, Demand to Cease Enforcement, and Equitable Abatement, including:

1. ATTATCHEMNT A- **COPY OF THE RESTRICTED ENDORSEMENT RISC**
2. ATTATCHEMNT B- **COPY OF BUYERS ORDER**
3. ATTATCHEMNT C- **COPY OF VITU OR DMV COPY**
4. ATTATCHEMNT D- **COPY OF CONDITIONAL ACCEPTANCE & PROOF OF CLAIM**
5. ATTATCHEMNT E- **AFFIDAVIT OF LEDGER**
6. ATTATCHEMNT F- **NOTICE OF RESCISSION**
7. ATTATCHEMNT G- **NOTICE OF CLASSIFICATION AND OBJECTION**
8. ATTATCHEMNT H- **COPY OF NOTICE OF CLAIM CORRESPONDANCE**
9. ATTATCHEMNT J- **VERIFIED CLAIM FOR SPECIFIC PERFORMANCE**
10. ATTATCHEMNT K- **FINAL NOTICE OF CLAIM, NOTICE TO CEASE ENFORCEMENT, AND EQUITABLE ABATEMENT**

Said packet was sent via Certified Mail with tracking number:
**USPS Certified Mail #: 9589 0710 5270 1509 9025 33**

Properly addressed to:

**Santander Consumer USA, Inc.**
Attn: Legal Department
P.O. Box 961245
Fort Worth, TX 76161-0244

4. This mailing constitutes lawful and timely notice of dishonor, claim for settlement, and administrative record of good faith. If enforcement continues without lawful rebuttal, the contents of this notice will be submitted into judicial or administrative proceedings as prima facie evidence of Santander's dishonor and commercial default.

**FURTHER AFFIANT SAYETH NOT.**

Executed this 7th day of May, 2025.

By: [signature] in trust ARR

**Marvin Jennings**, in propria persona
c/o 13215 SE Mill Plain Blvd, Suite C8-413
Vancouver, Washington [98684]
Without the United States
All rights reserved – no waiver

**JURAT**

State of Washington
County of Clark

Subscribed and sworn to before me this _____ day of ____________, 2025, by Marvin Jennings, known to me or satisfactorily proven to be the signer of the foregoing instrument.

Signature of Notary Public: ___________________________
Printed Name: ______________________________________
My Commission Expires: ______________________________.

(Seal)

# AFFIDAVIT OF MAILING

**State of Washington**
**County of Clark**

I, **Marvin Jennings**, hereinafter "Affiant," being first duly sworn, declare under penalty of perjury under the laws of the United States of America and the State of Washington that the following is true, correct, and complete to the best of my knowledge:

1. That I am over the age of eighteen (18) years, competent to testify, and the author and originator of the documents enclosed herein.
2. That on this **27th day of March, 2025**, I did personally assemble and seal the enclosed packet, titled **"Legal Notice and Conditional Acceptance – Jennings v. M&N Dealerships VIII, LLC et al."**, consisting of the following documents:
   - Conditional ***Acceptance*** and ***Demand for Verification***, Affidavit of Specific Negative ***Averment***
   - ***Notice of claim*** and Copy of the Endorsed Retail Installment Sales Contract (RISC) (Non Negotiable)
   - Affidavit of Ledger and Accounting
   - Notice ***of Rescission*** and ***Authorization to Collect***
   - DMV Notice to sue and Response Letter and Title Record Objection
3. That the above-mentioned documents were enclosed in a sealed envelope and deposited with the **United States Postal Service**, via **Certified Mail** with tracking number: 9514 7066 7161 5086 9002 18, properly addressed to:

**Santander Consumer USA, Inc.**
Attn: Legal Department
P.O. Box 961245
Fort Worth, TX 76161-0244

4. That the above-referenced mailing is being submitted as **lawful notice and evidence of service** for the purposes of both state and federal record.

FURTHER AFFIANT SAYETH NOT.

Executed this 27th day of March, 2025.

**By:** [signature] in trust
**Marvin Jennings**, in propria persona
c/o 13215 SE Mill Plain Blvd, Suite C8-413
Vancouver, Washington [98684]
**Without the United States**
(All rights reserved)

**JURAT**

State of Washington
County of Clark

Subscribed and sworn to before me on this 21 day of March, 2025, by **Marvin Jennings**, known to me or satisfactorily proven to be the signer of the foregoing instrument.

**Signature of Notary Public:** Arthur R Hardy II
**Printed Name:** Arthur R Hardy II
My commission expires: ______________________
(Seal)

# ATTACHMENT A

# ATTACHMENT B

# VEHICLE BUYER'S ORDER

Date: 02/16/2025

| Buyer Name and Address (Including County and Zip Code) | Co-Buyer Name and Address (Including County and Zip Code) | Dealer Name and Address |
|---|---|---|
| MARVIN WADE JENNINGS<br>9500 NE 5TH ST<br>VANCOUVER WA 98664<br>Email: kingmawjj@gmail.com<br>Phone: (360)909-4114<br>Cell: (360)909-4114 | N/A<br>Email: N/A<br>Phone: N/A<br>Cell: N/A | MCLOUGHLIN CHEVROLET<br>16700 SE MCLOUGHLIN BOULEVARD<br>MILWAUKIE OR 97267<br>Salesperson: ELLIOTT J DAWSON<br>Deal Number: 30826 |

THIS BUYER'S ORDER IS FOR THE FOLLOWING XX NEW ☐ USED ☐ CAR XX TRUCK  TO BE DELIVERED ON OR ABOUT 02/16/2025

| Year | Make | Model | Type | Trim | Color | Mileage | Stock # |
|---|---|---|---|---|---|---|---|
| 2025 | CHEVROLET | TRAX | 4DR FWD | JET BLK WI | MARINA BLU | 9 | PC25053X |

VIN: KL77LJEP6SC105268

## TRADE-IN RECORD 1

| | | | |
|---|---|---|---|
| YR.: N/A | MAKE: N/A | MODEL: N/A | TYPE: N/A |
| COLOR: N/A | TRIM: N/A | MILEAGE: N/A | |
| VIN: N/A | | | |
| TITLE NO.: N/A | PLATE NO.: N/A | EXP. DATE: N/A | |
| OWNER: N/A | LOAN #: N/A | | |
| LIENHOLDER: N/A | PHONE: N/A | | |
| ADDRESS: N/A | SPOKE WITH: N/A | | |
| AMOUNT: N/A | GOOD TILL: N/A | VERIFIED BY: N/A | |

## TRADE-IN RECORD 2

| | | | |
|---|---|---|---|
| YR.: N/A | MAKE: N/A | MODEL: N/A | TYPE: N/A |
| COLOR: N/A | TRIM: N/A | MILEAGE: N/A | |
| VIN: N/A | | | |
| TITLE NO.: N/A | PLATE NO.: N/A | EXP. DATE: N/A | |
| OWNER: N/A | LOAN #: N/A | | |
| LIENHOLDER: N/A | PHONE: N/A | | |
| ADDRESS: N/A | SPOKE WITH: N/A | | |
| AMOUNT: N/A | GOOD TILL: N/A | VERIFIED BY: N/A | |

## COLLISION COVERAGE

| | |
|---|---|
| NAME OF AGENT: ANY AGENT | PHONE: (800)280-1466 |
| ADDRESS: PO BOX 5090 | |
| POLICY NUMBER: 53-WA- 8376468 | COLLISION DEDUCTIBLE: 500.00 |
| INSURANCE CO.: THE GENERAL | SPOKE WITH: |
| EFFECTIVE DATE: 02/16/2025 | EXP. DATE: 02/16/2026 | VERIFIED BY: |

## OPTIONAL ELECTRONIC FILING FEE

For a fee of $ N/A, paid by you to the Dealer, this dealership will electronically file your vehicle title application, vehicle registration and other Oregon DMV documentation required to transfer ownership of the vehicle identified in this Buyers Order. The receipt of non-customized Oregon license plates may be expedited if you opt for the dealer to apply electronically. This is an optional service that you can decline.

ACCEPTS X N/A (INITIAL) DECLINES X M.J. (INITIAL)

## ITEMIZATION OF PURCHASE

| Item | Amount |
|---|---|
| Cash Price of Vehicle | $ 23900.00 |
| ALLY THEFT PROTECTION | 899.00 |
| N/A | N/A |
| N/A | N/A |
| N/A | N/A |
| N/A | N/A |
| N/A | N/A |
| N/A | N/A |
| N/A | N/A |
| N/A | N/A |
| N/A | N/A |
| N/A | N/A |
| N/A | N/A |
| N/A | N/A |
| N/A | N/A |
| N/A | N/A |
| N/A | N/A |
| N/A | N/A |
| N/A | N/A |
| N/A | N/A |
| N/A | N/A |
| N/A | N/A |
| N/A | N/A |
| N/A | N/A |
| N/A | N/A |
| N/A | N/A |
| N/A | N/A |
| N/A | N/A |
| N/A | N/A |
| N/A | N/A |
| N/A | N/A |



THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

**WARRANTY INFORMATION**

ALL WARRANTIES, IF ANY, BY A MANUFACTURER OR SUPPLIER OTHER THAN DEALER ARE THEIRS, NOT DEALER'S. ONLY SUCH MANUFACTURER OR OTHER SUPPLIER SHALL BE LIABLE FOR PERFORMANCE UNDER SUCH WARRANTIES, UNLESS DEALER FURNISHES BUYER WITH A SEPARATE WRITTEN WARRANTY OR SERVICE CONTRACT MADE BY DEALER ON ITS OWN BEHALF. DEALER NEITHER ASSUMES NOR AUTHORIZES ANY PERSON TO ASSUME FOR IT ANY LIABILITY IN CONNECTION WITH THE SALE OF ANY PRODUCTS.

UNLESS THE DEALER MAKES A WRITTEN WARRANTY ON ITS OWN BEHALF, OR ENTERS INTO A SERVICE CONTRACT WITHIN 90 DAYS FROM THE DATE OF THIS CONTRACT, THIS VEHICLE IS SOLD "AS-IS" AND "WITH ALL FAULTS." THE DEALER MAKES NO WARRANTIES, EXPRESS OR IMPLIED, ON THE VEHICLE, AND THERE WILL BE NO IMPLIED WARRANTIES OF MERCHANTABILITY OR OF FITNESS FOR A PARTICULAR PURPOSE. THERE ARE NO WARRANTIES WHICH EXTEND BEYOND THE DESCRIPTION ON PAGES 1 & 2 HEREOF. THIS PROVISION DOES NOT AFFECT ANY WARRANTIES COVERING THE VEHICLE THAT THE MANUFACTURER OR SUPPLIER MAY PROVIDE. THE ENTIRE RISK AS TO THE QUALITY AND PERFORMANCE OF THE VEHICLE IS WITH THE BUYER. BUYER ACKNOWLEDGES THAT IF THE VEHICLE PROVES DEFECTIVE AFTER PURCHASE, THE BUYER AND NOT THE MANUFACTURER, DISTRIBUTOR OR RETAILER ASSUMES THE ENTIRE COST OF ALL NECESSARY SERVICING OR REPAIR.

LIMITATION OF DAMAGES: DEALER SHALL NOT BE LIABLE TO BUYER FOR LOSS OF USE, LOSS OF TIME, LOSS OF PROFITS, LOSS OF INCOME OR OTHER CONSEQUENTIAL OR INCIDENTAL DAMAGES, OR PUNITIVE DAMAGES. DEALER SHALL NOT BE RESPONSIBLE FOR THE LOSS OF OR DAMAGE TO BUYER'S PERSONAL PROPERTY LEFT IN THE VEHICLE OR IN BUYER'S TRADE-IN.

1. Total Price $ 24799.00
2. Other Charges
   a. License/Registration Fee $ 455.50
   b. Title Fee $ 25.00
   c. DEQ Certification Fee $ N/A
   d. Electronic Filing Fee $ N/A
   e. Title & Registration Processing Fee $ 200.00
   f. Service Contract Fee $ 2999.00
   g. OTHER TAXES $ 2207.11
   h. N/A $ N/A
   Total Other Charges (Add 2a through 2h) $ 5886.61
3. Downpayment:
   a. Cash Downpayment $ 1000.00
   b. One deferred downpayment (pickup pymt) due N/A $ N/A
   c. Trade In: $ N/A
      Less Payoff $ N/A Net $ N/A
   Total Down (a + b + c) $ 1000.00
   d. Trade In: $ N/A
      Less Payoff $ N/A Net $ N/A
   Total Down (a + b + c + d) $ 1000.00
4. Unpaid balance of cash sale price (1 + 2 minus 3) $ 29685.61
   To be paid

**For your protection, request a receipt for all payments you make.**

**This Agreement is not binding upon either Dealer or Buyer until signed by an authorized Dealer representative.**

**If Buyer is buying this Vehicle in a credit sale transaction evidenced by a retail installment sale contract, this Agreement is binding when the retail installment contract is signed, but will not remain binding if a third party finance source does not agree to purchase the retail installment contract executed by Buyer and Dealer based on this Agreement on the terms as submitted. See paragraph 10 on page 3 of this Agreement, which shall survive the termination of this agreement for any reason.**

**Buyer agrees that this Agreement includes all of the terms and conditions on all pages of this Agreement hereof, that this Agreement cancels and supersedes any prior agreement including oral agreements, and as of the date below comprises; together with any retail installment sale contract the complete and exclusive statement of the terms of the agreement relating to the subject matters covered by this Agreement. Buyer, by signing this Agreement, acknowledges that Buyer has read and agrees to its terms and has received a true copy of this Agreement.**

**Agreement to Arbitrate:** By signing below, you agree that, pursuant to the Arbitration Provision on page 4 of this contract, you or we may elect to resolve any dispute by neutral, binding arbitration and not by a court action. See the Arbitration Provision for additional information concerning the agreement to arbitrate.

Buyer Signs X E-SIGNED by MARVIN JENNINGS on 2025-02-16 [illegible] GMT     Co-Buyer Signs X N/A

☒ **BUYER ACKNOWLEDGES THAT IF THIS BOX IS CHECKED, THIS AGREEMENT CONTAINS A HOLD CHECK AGREEMENT.**

**Insert terms and conditions of Hold Check Agreement below (For dealer use only):**

**BUYER SIGNS X** E-SIGNED by MARVIN JENNINGS on 2025-02-16 [illegible]:36:39 GMT   **DATE** 02/16/2025

**CO-BUYER SIGNS X** N/A   **DATE** N/A

**MANAGER'S APPROVAL**
(Must Be Accepted By An Authorized Representative of the Dealer)

X E-SIGNED by DAVID MENDENHALL on 2025-02-18 01:02:00 GMT   **DATE** 02/16/2025



THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

# ADDITIONAL TERMS AND CONDITIONS

1. These definitions apply to this Agreement:
*"Agreement"* means this Vehicle Buyer's Order.
*"Dealer"* means the authorized Dealer named on page 1 of this Agreement.
*"Buyer"* means the party or parties executing this Agreement as such.
*"Manufacturer"* means the manufacturer of the Vehicle.
*"Vehicle"* is the vehicle or chassis that is the subject of this Agreement.
*"Trade-In"* is the used vehicle that Buyer intends to use as part of the consideration for the purchase price of the Vehicle or otherwise is to be transferred to Dealer.

2. The Manufacturer may change the design of any vehicle, chassis, accessories, or parts at any time without notice. The Manufacturer may also make the same or any similar change upon any vehicle, chassis, accessories, or parts already bought by or shipped to Dealer or being manufactured or sold in accordance with Dealer orders. If the Manufacturer makes such a change, Dealer has no obligation to Buyer to notify Buyer or make the same or any similar change in the Vehicle or its parts either before or after Dealer delivers the Vehicle to Buyer. The Manufacturer may change the price of new vehicles without notice. If the Manufacturer changes the price of the new vehicle of the series and body type of the Vehicle before Dealer delivers it to Buyer, Dealer may change the price of the Vehicle to Buyer accordingly. If Dealer changes the price of the Vehicle, Buyer may cancel this Agreement and Dealer shall return the Trade-In to Buyer if the Trade-In remains available. Buyer agrees to pay Dealer reasonable storage and repair charges. If the Trade-In is unavailable, Dealer shall pay Buyer the Trade-In allowance less a sales commission of 15% and any expense in storing, insuring, conditioning or advertising the Trade-In for sale unless prohibited by law.

3. The Trade-in shall be appraised or re-appraised at the time it is delivered to Dealer. The appraised value will be the allowance for the Trade-In. If the reappraised value is lower than the amount shown in this Agreement, Buyer may cancel this Agreement. Buyer must exercise Buyer's right to cancel upon a change in the appraised value before Dealer delivers the Vehicle to Buyer and Buyer surrenders the Trade-In to Dealer.

4. Buyer shall give Dealer satisfactory evidence of title to any Trade-In upon delivery to Dealer. Buyer warrants any Trade-In to be Buyer's property, free and clear of all liens and encumbrances unless otherwise noted in this Agreement, and that the Trade-In has never had a salvage or "branded" title, been reconstructed, rebuilt, flooded or had major mechanical damage that caused the reconstruction of the Trade-In. Buyer represents that the Trade-In's mileage shown in this Agreement is the actual mileage on the Trade-In. Buyer authorizes Dealer to rely on this representation in entering into this Agreement. If Buyer provides false information related to the Trade-In Buyer agrees to repurchase the Trade-In for the full allowance given to Buyer plus all costs incurred by Dealer in resolving the matter including but not limited to reconditioning costs, legal fees, court and collection costs.

5. Except as permitted under Sections 2 or 3 above, if Buyer fails or refuses to accept delivery of the Vehicle or comply with this Agreement, without limiting any other rights Dealer may have, Dealer may keep as liquidated damages any deposit made by Buyer, to the extent not prohibited by law. Dealer may also reimburse itself for any expenses and losses it incurs or suffers as a result of Buyer's failure or refusal to comply with this Agreement, including, without limitation, reasonable attorney's fees. Dealer isn't liable for failure to deliver or delay in delivering the Vehicle where such failure or delay is due, in whole or in part, to any cause beyond Dealer's control or without Dealer's fault or negligence.

6. The Vehicle price doesn't include sales taxes, use taxes or occupational taxes (federal, state or local) unless expressly so stated. Buyer agrees to pay, unless prohibited by law, any such taxes imposed on or that apply to the transaction reflected by this Agreement, regardless of who has primary liability for the tax.

7. If this Agreement shows a charge for credit insurance, this paragraph applies. The credit insurance provisions in any retail installment contract Buyer may sign related to this Agreement will apply. If such credit insurance is wholly or partially unavailable under the designated policy, Dealer will deduct the applicable part of the credit insurance charge shown in this Agreement and the related finance charge from the total time balance. If such credit insurance does not become effective, Dealer will notify Buyer. This Agreement and any related retail installment contract Buyer may sign shall otherwise remain fully effective, to the extent provided by applicable law.

8. Buyer agrees to sign such agreements or documents as Dealer may reasonably require to effect the terms and conditions of payment shown in this Agreement and to otherwise carry out the intent of this Agreement.

9. This Agreement is an agreement to buy the Vehicle. If there is a balance due, Buyer's obligation to buy and Dealer's obligation to sell the Vehicle are expressly conditioned upon Buyer obtaining financing for the balance due. Buyer has two business days from the date of this Agreement to obtain such financing. If Buyer pays Dealer with a check that is dishonored or unpaid for any reason, Dealer may, in its sole discretion, declare this Agreement null and void and retake the Vehicle and/or make claims against Buyer on the check. In addition, to the extent permitted by law, Buyer will pay Dealer a $35 returned check charge to the extent permitted by law.

10. This paragraph applies if Buyer is buying the Vehicle from Dealer under the terms of a retail installment contract. Dealer agrees to deliver the Vehicle to Buyer on the date this Agreement is signed by Dealer and Buyer. Buyer understands that it may take a few days for Dealer to verify Buyer's credit and to obtain financing directly from the third party lender whose loan documents Dealer has had Buyer sign (the "Lender") or, if Buyer signed a retail installment sale contract with Dealer, to assign the retail installment contract to a third party financial institution. Buyer agrees that Dealer has 14 days after the date on which Buyer takes possession of the Vehicle to obtain financing from the Lender or to assign the retail installment sale contract. If Dealer is unable to obtain financing from the Lender, or to assign the retail installment sale contract to any one of the financial institutions with whom the Dealer regularly does business, within this period of time, Buyer or Dealer may cancel the sale of the Vehicle. If the sale is canceled, the Lender's loan documents or the retail installment sale contract Buyer has signed will be null and void and of no effect. This limited right to cancel will end at the earlier of (i) the date Dealer obtains financing from the Lender or assign the retail installment sale contract and (ii) 14 days after the date on which Buyer takes possession of the Vehicle. If Dealer does not obtain financing from the Lender or assign the retail installment sale contract within the time described above, and Buyer or Dealer cancel the sale as provided above, Buyer must return the Vehicle to Dealer immediately in the same condition as when sold, reasonable wear and tear excepted. Buyer agrees to pay Dealer the fair market value of damage to, excessive wear and tear on or loss of the Vehicle occurring between the date Buyer takes possession of the Vehicle and the date Buyer returns the Vehicle to Dealer custody and to hold Dealer harmless from any expenses, costs and fees arising out of any act pertaining to the operation of the Vehicle while it is in Buyer's possession. If the Vehicle is immobilized or impounded while in Buyer's possession, Buyer agrees to do whatever is necessary to ensure the Vehicle's return to Dealer. If Buyer does not return the Vehicle immediately, Buyer will be liable for all expenses incurred by Dealer in taking the Vehicle from Buyer. If Buyer fails to return the Vehicle, Dealer may use any legal means to take it back. If, within 14 days after the date on which Buyer takes possession of the Vehicle, Dealer sends notice to Buyer by first class mail or written electronic communication that financing is unavailable, Buyer is liable to Dealer for a reasonable charge per mile for the use of the Vehicle. While the Vehicle is in Buyer's possession, all terms of this Agreement and the retail installment contract, including those relating to use of the Vehicle, shall be in full force, except that liability, collision, and comprehensive insurance on the Vehicle shall be provided by Dealer's insurance policy until this Agreement and the retail installment contract are no longer subject to rescission under this paragraph. Afterward, the Vehicle shall be covered by the Buyer's insurance policy. To the extent not prohibited by law, Buyer must pay all reasonable costs for repair of any damage to the Vehicle not covered by Dealer's insurance until the Vehicle is returned to Dealer.

11. Buyer may arrange financing through Dealer or a finance source of Buyer's choosing. Buyer may be able to obtain more favorable financing from a third party. Buyer understands the annual percentage rate (APR) quoted by Dealer may be negotiable. If this Agreement shows that any part of the transaction is to be financed, Dealer may assist in submitting credit applications to third parties, for which Buyer grants permission. Dealer will not lend Buyer money or finance this transaction regardless of any notation to the contrary on any document. No agent, employee or manager of Dealer may change this policy.

12. In the event that any of the terms and conditions of this Agreement <u>other than those of paragraph 10, above,</u> are inconsistent with the terms and conditions of any retail installment sale contract between Buyer and Dealer, the terms of such retail installment sale contract shall apply. Each provision of this Agreement shall be severable from every other provision of this Agreement for the purpose of determining the legal enforceability of any provision hereof.

13. **Used Car Buyers Guide. The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.**
**Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.**

14. **IT IS BUYER'S RESPONSIBILITY TO OBTAIN INSURANCE ON THE VEHICLE.** Dealer may request insurance information from Buyer in order to register the Vehicle with the Division of Motor Vehicles (DMV) or for verifying insurance coverage. Dealer's request for insurance information does not constitute an agreement to transfer or obtain insurance coverage on the Vehicle. By signing this agreement, except as otherwise provided in paragraph 10 above, Buyer covenants and agrees that Buyer has obtained, or will obtain, before the Vehicle is driven by anyone, insurance on the Vehicle.

15. **EACH PARTY HERETO HEREBY IRREVOCABLY, AND UNCONDITIONALLY WAIVES, TO THE EXTENT PERMITTED BY APPLICABLE LAW, TRIAL BY JURY IN ANY LEGAL ACTION OR PROCEEDING RELATING TO THIS AGREEMENT AND ANY OTHER DOCUMENT RELATED HERETO.**

16. You agree that we may try to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you.

17. To secure the punctual payment and performance of purchaser's obligations under this or any other Agreement with dealer, purchaser hereby grants to dealer or its assigns a security interest in the vehicle and the trade-in Together with all proceeds and products thereof.

18. Buyer agrees to immediately reimburse, indemnify, defend and hold dealer harmless from any loss, claim or damage resulting from buyer's Registration of or failure to register the vehicle in the appropriate state of buyer's failure to obtain property and liability insurance on the vehicle. Buyer hereby authorizes Dealer to require buyer's insurance company to name dealer or its assigns as loss payee on all insurance policies covering the vehicle.

19. This order contains the entire agreement of the parties and may not be amended orally. Oregon law shall govern the interpretation and enforcement of this order. This order may not be assigned by buyer without dealer's prior written consent.

20. In any litigation regarding this buyer's order, buyer will reimburse dealer for all reasonable attorneys' fees and court costs should dealer prevail. Should buyer prevail buyer waives any consequential, punitive, or incidental damages, damage to property, or any loss of time, profits, or income. Buyer's damages are limited to the return of the total purchase indicated in this buyer's order.

21. Miscellaneous Issues: * the agreed upon trade-in allowance(s) indicated in this buyer's order may not necessarily represent the actual cash value. * dealer will maintain a security interest in the vehicle being sold and the buyer grants dealer a security interest in the trade-in(s) until the total amount due has been paid to dealer.* buyer may not assign this buyer's order without the written consent of dealer. * buyer acknowledges that this transaction occurred in the state of Oregon and Oregon law will control in any disputes regarding this buyer's order. * buyer agrees that he will not export this vehicle and that it is intended for use in the United States.



THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

## ARBITRATION PROVISION

**PLEASE REVIEW - IMPORTANT - AFFECTS YOUR LEGAL RIGHTS**

1. **EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.**
2. **IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.**
3. **DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.**

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Provision shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action. You may choose the American Arbitration Association, 1633 Broadway, 10th Floor, New York, New York 10019 (www.adr.org), or any other organization to conduct the arbitration subject to our approval. You may get a copy of the rules of an arbitration organization by contacting the organization or visiting its website.

Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law and the applicable statute of limitations. The arbitration hearing shall be conducted in the federal district in which you reside unless the Seller-Creditor is a party to the claim or dispute, in which case the hearing will be held in the federal district where this contract was executed. We will pay your filing, administration, service or case management fee and your arbitrator or hearing fee all up to a maximum of $5000, unless the law or the rules of the chosen arbitration organization require us to pay more. The amount we pay may be reimbursed in whole or in part by decision of the arbitrator if the arbitrator finds that any of your claims is frivolous under applicable law. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. If the chosen arbitration organization's rules conflict with this Arbitration Provision, then the provisions of this Arbitration Provision shall control. Any arbitration under this Arbitration Provision shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et. seq.) and not by any state law concerning arbitration. Any award by the arbitrator shall be in writing and will be final and binding on all parties, subject to any limited right to appeal under the Federal Arbitration Act.

You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies, such as repossession, or by filing an action to recover the vehicle, to recover a deficiency balance, or for individual injunctive relief. Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Provision shall survive any termination, payoff or transfer of this contract. If any part of this Arbitration Provision, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this Arbitration Provision shall be unenforceable.



THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

# ATTACHMENT C

vitu

| Bundle ID | Submission Date | Transaction Id | Treasury Date | Log Number |
|---|---|---|---|---|
| 272387 | 03/04/2025 | 34889502 | 03/06/2025 | 390 |

# OR DMV Copy

| Owner | Second Owner | Third Owner |
|---|---|---|
| REGOWN 1829233<br>JENNINGS, MARVIN WADE | -- | -- |

Residence Address
9500 NE 5TH ST
VANCOUVER, WA, 986643307
Clark

| Primary SIH | Second SIH | Third SIH |
|---|---|---|
| BUS 1773488 | -- | -- |
| SANTANDER CONSUMER USA INC | | |
| PO BOX 961288 | -- | -- |
| FORT WORTH, TX, 761610288 | -- | -- |

SURVIVORSHIP
☐ Joint Owners or Lessees agree that title will show joint ownership with right of survivorship.
☐ Joint Security Interest Holders agree that title will show joint security interest with right of survivorship.

Vehicle Info
**KL77LJEP6SC105268 2025 CHEV Trax 4D Gasoline**

| Purchase Date | Odometer | Odometer Date | Temp Permit Date | Weight/Length | MPG | Enrolled In OReGO |
|---|---|---|---|---|---|---|
| 02/16/2025 | 9 | 02/16/2025 | -- | -- | 22 | No |

| Plate Number | Plate Type | Registration Sticker # | Expiration Date | Titling Doc | Titling State |
|---|---|---|---|---|---|
| -- | -- | -- | TITLE ONLY | MSO/MCO | |

| Submitted by | Dealer Phone Number | Dealer Number |
|---|---|---|
| McLoughlin Chevrolet<br>16700 SE McLoughlin Blvd<br>Milwaukie, OR, 97267 | 503-652-0000 | DA3922 |

**Fees Summary**

| | |
|---|---|
| Title | $ 106.00 |
| **Total** | **$ 106.00** |

**For Vitu Pre-Check use**

Pre-Checker Name

Error Messages
- ☐ Missing / Incorrect Registered Owner / Security Interest Holder
- ☐ MCO / Title Missing
- ☐ Missing / Incorrect Release of Interest
- ☐ Survivorship Error
- ☐ Odometer missing / Not keyed correctly
- ☐ Plate transfer not done / Incorrect plate assigned
- ☐ 228 Incomplete / Not signed
- ☐ DEQ / VIN Inspection missing
- ☐ Error Statement required
- ☐ Fee error
- ☐ Temporary Permit Date Keyed Incorrectly
- ☐ Other:

Comments / Resolution:

19541

NON-NEGOTIABLE

**TWO THOUSAND TWO HUNDRED SEVEN DOLLARS AND 11/100**

03/04/25 $2,207.11

WASHINGTON DEPARTMENT OF LICENSING

WASHINGTON DEPARTMENT OF LICENSING 15656 03/04/25

WASHINGTON SALES TAX REFUND. PROCESSED AS OR TITLE ONLY 2025
CHEVY TRAX PC25053X GT

| DATE | ACCT# | AMOUNT | CTRL# | DATE | ACCT# | AMOUNT | CTRL# |
|---|---|---|---|---|---|---|---|
| 03/04/25 | 324A | 2,207.11 | 76338 | | | | |

19541 $2,207.11

19540

**THREE HUNDRED SEVENTY FOUR DOLLARS AND 50/100**

NON-NEGOTIABLE

03/04/25 $374.50

MARVIN WADE JENNINGS
9500 NE 5TH ST
VANCOUVER WA 98664

MARVIN WADE JENNINGS 76338 03/04/25

LIC FEE REFUND LESS TITLE FEE FOR OREGON TITLE 2025 CHEVY TRAX
PC25053X GT

| DATE | ACCT# | AMOUNT | CTRL# | DATE | ACCT# | AMOUNT | CTRL# |
|---|---|---|---|---|---|---|---|
| 03/04/25 | 308 | 374.50 | 76338 | | | | |

19540 $374.50

# ATTACHMENT D

FORWARD TO LEGAL DEPARTMENT

# NOTICE OF DEMAND FOR PROOF OF CLAIM, CONDITIONAL ACCEPTANCE, AND NOTICE TO CEASE AND DESIST

**In Re: Jennings v. M&N Dealerships VIII, LLC et al.**

TO: Santander Consumer USA, Inc.
RE: Alleged account involving Claimant Marvin Jennings
DATE: 03/27/25

Good day. Pursuant to Public Law 95-109, 91 Stat. 874, enacted on September 20, 1977, specifically Section 805(a) of the Fair Debt Collection Practices Act (codified as 15 U.S.C. § 1692c(a)):

**" Communication with the consumer generally —**
**Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt..."**

This correspondence constitutes a **conditional acceptance** and **demand for sworn verification** from any party asserting an interest or claim under the above-referenced matter.

You are hereby formally noticed that **any future collection attempts, communications, or encumbrances** arising from the referenced transaction will be presumed unlawful and treated as violations of the following:

## I. CONDITIONAL ACCEPTANCE & ADMISSIONS BY FAILURE TO REBUT

This demand shall serve as a **formal conditional acceptance** of any alleged debt, subject to the production of the following within **ten (10) calendar days** of receipt:

1. A **sworn affidavit** from a **natural person** with **firsthand knowledge** of the transaction who can attest under penalty of perjury:
    - To the **legal sufficiency** of the transaction;
    - That lawful **consideration was tendered**;
    - That Santander is the **holder in due course** of the instrument;
    - That the transaction was not in **default** at the time of assignment;
    - That all **TILA** and **GAAP** disclosures were made to the Claimant.

2. ~~A full accounting including ledgers, book entries, any endorsements, assignments, and~~ proof of **authority to enforce** the alleged obligation.
3. **A certified copy** of any **judgment, lien, or original contract** showing Santander as the originating creditor or lawful assignee **prior to any default.**

Failure to provide these within ten (10) days shall constitute:

- Tacit **admission of all claims asserted by Claimant;**
- **Estoppel** from asserting any contrary position at law or in equity;
- Consent to immediate legal action seeking **damages, declaratory relief, and injunctive remedy.**

## II. FDCPA & REG F VIOLATIONS – NOTICE OF CLAIM PRESERVATION

Pursuant to 15 U.S.C. § 1692k and 12 CFR §§ 1006.18, 1006.34, and 1006.38:

- The **failure to verify the alleged debt** upon written demand;
- The **failure to cease collection efforts** during a valid dispute;
- The **assignment of debt post-default** solely for the purpose of collection;
- Any communication not preceded by proper **validation notice** within five (5) days;

...will be treated as actionable violations under federal law, subjecting your agency to the full remedies provided therein, including:

- Statutory damages up to $1,000 per violation;
- Actual damages;
- Attorney's fees and court costs;
- Punitive and equitable relief.

Additionally, violations of **12 U.S.C. § 5531** (prohibiting unfair, deceptive, or abusive acts or practices) and **15 U.S.C. § 1681s-2** (regulating furnishers of credit information) are hereby preserved for future litigation if the unauthorized use, dissemination, or communication of credit data persists.

**"The term 'creditor' does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another."**
— *15 U.S.C. § 1692a(4)*

This confirms that Santander is operating as a **debt collector**, not a creditor, and is therefore **bound by all FDCPA regulations.**

## III. NOTICE TO CEASE AND DESIST

### III-A. NOTICE OF PRIVACY VIOLATION & UNAUTHORIZED CREDIT REPORTING

You are hereby notified that **no express written consent** has been granted by the Claimant to report any information regarding the alleged transaction to any credit bureau or consumer reporting agency. Any such reporting, or continued furnishing of information, absent a verified court order or enforceable agreement, constitutes:

- A **violation of Claimant's right to privacy** under federal and Oregon law;
- An **unauthorized use and disclosure of private consumer financial information**, subject to action under the **Fair Credit Reporting Act** (FCRA) and related statutes;
- **Constructive fraud, misrepresentation, and defamation of credit**;
- And a continuing **injury to person and reputation**, for which damages shall be calculated retroactively from **February 17, 2025**, the date Respondents received the signed and endorsed consumer instrument.

**Claimant hereby imposes a fee of $1,000.00 per day, nunc pro tunc,** for any day in which Santander or its agents report or threaten to report data related to this alleged obligation. All such entries must be immediately deleted.

You are **hereby ordered to cease and desist** any further communication, enforcement attempts, or indirect collection actions unless and until full verification is produced.

Any further attempt to collect or report the alleged debt without compliance will be used as **evidence of willful misconduct, harassment, extortion, and bad-faith enforcement.**

## IV. PRESERVATION OF CLAIMS – FUTURE FEDERAL ACTION

This letter serves as formal **evidence of notice** and **intent to pursue federal litigation** should compliance not be met. The communication will be submitted into the public record as a **pre-litigation exhibit** in both state and federal forums.

---

## V. RESERVATION OF RIGHTS

Nothing in this notice shall be construed as a waiver of any constitutional, statutory, or equitable rights. Claimant reserves all rights under:

- The **Fair Debt Collection Practices Act** (FDCPA);
- **Regulation F** under the CFPB;
- **Oregon Constitution**, Article I §§ 10 and 21;
- **U.S. Constitution**, Article I § 10 and Amendments IV, V, and XIV.

# Notice to Principal is Notice to Agent. Notice to Agent is Notice to Principal.

> NOTICE: THIS DOCUMENT IS NOT INTENDED TO THREATEN, HARASS, HINDER OR OBSTRUCT ANY LAWFUL OPERATIONS. IT IS FOR THE PURPOSES OF OBTAINING LAWFUL REMEDY AS IS PROVIDED BY

**Send all verified responses to:**

c/o Marvin Jennings
13215 SE Mill Plain Blvd, C8-413
Vancouver, WA 98684

Respectfully,
**Marvin Jennings**
in propria persona
(Without waiver, all rights reserved)

I, Jennings, Marvin, do hereby swear and affirm under penalty of perjury under the laws of the United States of America that the foregoing statements and claims are true and correct to the best of my knowledge, information, and belief.

Executed on this 27 17th day of March, 2025.

Respectfully,
Jennings, Marvin [signature] in trust

State of Washington
County of Clark

Subscribed and sworn to before me this 27 day of March, 2025, by ____________________

Notary Public Signature: [signature] SEAL

My commission expires: May 17, 2027

ARTHUR R HARDY III
NOTARY PUBLIC
STATE OF WASHINGTON
My Comm. Expires May 17, 2027
No. 23017223

# ATTACHMENT E

FORWARD TO LEGAL DEPARTMENT

# AFFIDAVIT OF LEDGER UNDER TILA & GAAP DISCLOSURE FROM CONSUMER'S PERSPECTIVE

Sworn Statement:
"I, Marvin Wade Jennings, the undersigned claimant, affirm that the following ledger represents a true and accurate accounting of the credit transaction at issue in this claim. This ledger is prepared in accordance with Article 1 section 10 of the United stated Constitution Contract Clause, 15 U.S.C. § 1601 et seq. (Truth in Lending Act -- TILA et seq) and Generally Accepted Accounting Principles (GAAP), specifically ASC 310 (Receivables) and ASC 605 (Revenue Recognition).

This record demonstrates the failure of the Respondents to properly apply my credit as required under TILA and GAAP, resulting in:

1. **Overstating liabilities** -- Incorrectly recording a consumer financial asset as a debt obligation.
2. **Understating assets** -- Failing to recognize the consumer's deposit as an offsetting receivable.
3. **Misstating the financial position** -- Violating GAAP principles of accurate revenue recognition and liability reporting.

Under TILA (15 U.S.C. § 1640), these failures constitute statutory violations, making the transaction **legally voidable** and requiring statutory damages for noncompliance.

## Ledger Reflecting Consumer's Position Under TILA & GAAP

| Date | Description | Debit (Consumer's Credit Application Value) | Credit (Receivable & Application of Funds) |
|---|---|---|---|
| 02/16/2025 | **Consumer Deposit (Initial Transaction Value - Issued Credit)** | **$65,257.12** | |
| 02/16/2025 | **Amount Financed (Loan Amount Funded to Seller)** | | **$29,685.61** |
| 02/16/2025 | **Unearned Finance Charge (Revenue Recognition per GAAP)** | | **$34,571.51** |
| 02/16/2025 | **Total Sale Price (Recorded as Consumer's Payable & Receivable)** | | **$65,257.12** |

## Key Points & Analysis:

1. The **Total Sale Price ($65,257.12)** is both **a payable to the consumer** (as the initial deposit) and **a receivable from the consumer** (as recorded by the lender).
   - This establishes that the **consumer funded the entire transaction** through their endorsement and credit application.
   - The consumer is, by function, both **the investor and the obligor** under the misclassified contract.
2. The **Amount Financed ($29,685.61)** is not an extension of credit by the lender, but rather an amount derived from the consumer's **own financial instrument** (the credit application).
3. The **Unearned Finance Charge ($34,571.51)** represents a **hidden yield spread premium** extracted from the transaction, indicating **undisclosed profit** obtained from the monetization of the consumer's credit.
4. The **consumer's deposit ($65,257.12)** was converted into a **loan against themselves**, forcing them into a debt obligation for their own money—**a deceptive and misleading accounting practice.**

## Conclusion & Demand for Reconciliation

The financial institution has been in default since February 17th, 2025, when it received the RISC endorsed "in trust", being authorization to credit the account, and per the Notice of Rescission and Revocation of Authority . Its continued failure to properly account for, disclose, and report the transaction has resulted in:

- Financial harm & damages
- Undue stress & reputational injury
- Commercial disparagement
- Violation of TILA-mandated disclosures

This misclassification violates TILA (15 U.S.C. § 1601 et seq.), which mandates full disclosure of financial terms and proper application of payments. Specifically:

- A receivable was created, assigned, and factored without crediting the consumer accordingly.
- This constitutes unjust enrichment and financial misrepresentation.

Accordingly, the consumer demands the following corrective actions:

1. Credit the receivable to the payable in compliance with GAAP, TILA, and contract terms.
2. Update all financial records to reflect a "PAID IN FULL" status.
3. Amend the credit report to remove inaccurate reporting and reflect the lawful disposition of the transaction.
4. Cease all unlawful enforcement actions, including any attempt to collect, repossess, or assign the obligation without proper accounting.
5. Failure to comply within three (3) days of receipt of this notice will result in immediate enforcement action, including a demand for full restitution and damages for statutory violations.

## Verification & Jurat Statement

State of Washington
County of Clark

I, Marvin Wade Jennings, affirm under penalty of perjury under the laws of the United States of America, that the above ledger, financial entries, and accompanying statements are true and correct to the best of my knowledge and belief.

Executed on this 27 day of March, 2025.

Marvin Wade Jennings
c/o 13215 se mill plain blvd c8-413 , Vancouver , Wa 98684

# ATTACHMENT F

FORWARD TO: LEGAL DEPARTMENT

FORMAL NOTICE OF RESCISSION, CLAIM, LIABILITY, AND DEMAND FOR ACCOUNTING

To:
McLoughlin Chevrolet
16700 SE McLoughlin Blvd
Milwaukie, OR 97267

Santander Consumer USA
1601 Elm St. STE 800
Dallas, TX 75201-4701

**Notice of Rescission, Demand for Accounting, and Correction of Record**

JOHN HUNT, in his capacity as an Authorized Representative of McLoughlin Chevrolet

Cc: CFO: Juan Carlos Alvarez de Soto
C.T. CORPORATION SYSTEM, in its capacity as Registered Agent for Santander Consumer USA Inc.,

On February 16th, 2025, Claimant entered into a consumer credit transaction with M&N DEALERSHIPS VIII, LLC Dba MCLOUGHLIN CHEVROLET, deal # 30826, for the acquisition of a 2025 Chevy Trax VIN# KL77LJEP6SC105268,

I would like to thank you for your lending services unfortunately i was unable to provide my contracting terms upon the acceptance of your agreement. I am reaching out in good faith regarding defects in the handling of my transaction, which require immediate correction. The agreement was structured unilaterally, denying me the ability to propose or negotiate contractual terms.

The use of DocuSign, presented as a take-it-or-leave-it contract, further precluded any opportunity to structure the agreement to reflect my intent, particularly regarding security interests, payment applications, and the treatment of my endorsement. The absence of meaningful negotiation and full disclosure alters the enforceability and equitable obligations arising from the agreement.

To resolve this matter, I am granting you three (3) calendar days from receipt of this notice to provide adequate assurances and correct the record. If this was done in error, I expect an

~~immediate remedy. However, failure to act will constitute tacit agreement that the defects were~~ intentional and serve as formal notice of rescission, requiring no further notice.

Effective 24 hours from receipt of this notice, any security interests, powers of attorney, or implied authority granted within the Retail Installment Sales Contract (RISC) or related agreements are revoked and nullified unless you provide:

- Sworn testimony from an individual with firsthand knowledge of the transaction
- Full ledger disclosure of the credit application, payment history, and any related assignments

The RISC and Security Agreement were endorsed "In Trust", preserving the true nature of the consumer credit transaction and confirming that title to my proceeds remains intact. Any failure to acknowledge and honor this endorsement constitutes: Breach of trust & fiduciary duty, Unauthorized conversion of consumer paper, Unjust enrichment

You are required to provide, within three (3) calendar days:

A full accounting of all proceeds derived from my credit application and note. Verification of securitization, hypothecation, or assignment and the identity of third parties involved. Proof of legal authority and standing to enforce any alleged claim.

Failure to comply within the time allotted will be deemed an admission that proceeds from the transaction were misapplied, unlawfully assigned, or concealed, constituting: Fraudulent concealment, Unjust enrichment, Conversion

Enclosed is a copy of the endorsed RISC, which reflects my contracting terms as the principal party to this transaction. You are hereby required to provide adequate assurance of performance within three (3) calendar days by confirming: The true accounting of all transactions involving my credit application. That no unauthorized securitization, assignment, or factoring has occurred. That you hold legal standing to enforce any purported claim.

Failure to provide such assurances will constitute a failure to perform, thereby voiding any obligations alleged against me. I will not be deemed to have to perform on anything absent your compliance. If this matter is not resolved, this notice will serve as formal notice of rescission, effective retroactively. Failure to cure these defects within the time allotted will result in immediate legal action, including but not limited to: Breach of contract claims, Unjust enrichment & conversion Injunctive relief to prevent enforcement attempts.

**Notice of Cease and Desist – Credit Reporting Activities**

**Any further reporting to consumer reporting agencies under my name or social security number, without my express written consent or lawful court order, shall be considered a willful invasion of privacy and a violation of my right to be left alone in private capacity.** You are hereby ordered to immediately cease all credit reporting activities related to this transaction. **Failure to comply will result in a fee of $1,000 per day, retroactive to the date of**

**receipt of the restrictively endorsed Retail Installment Sales Contract ("In Trust") on February 17, 2025,** and shall be evidence of unlawful data use, defamation of character, and commercial disparagement.

## Notice of Administrative Conversion & Constitutional Violations

You are hereby put on notice that Claimant has identified unlawful administrative action in the form of the DMV assigning title and listing Santander Consumer USA Inc. as a security interest holder on Claimant's private automobile—absent contract consummation, lawful credit extended, or proper authority.

This constitutes **a constructive taking** in violation of **Article I, Section 18 of the Oregon Constitution** and **the Fifth Amendment to the U.S. Constitution** (Takings Clause), by appropriating Claimant's property interest and assigning it to a third party without just compensation or due process. Such action also violates:

- **ORS 93.140** (requiring lawful written transfer of property interests),
- **ORS 79.0203** (requiring value and agreement for attachment of a security interest), and
- **Articles I, Sections 10 & 20 of the Oregon Constitution**, which guarantee equal protection and access to legal remedy.

The DMV's registry, operating as a for-profit corporate system, does not possess constitutional authority to reclassify private property into the commercial jurisdiction of the state without express agreement or lawful cause.

Failure to correct this record and remove any unauthorized security interest designation shall be construed as **constructive fraud, unlawful conversion, and regulatory overreach**, and will be addressed in forthcoming litigation. Absent a sworn, point-for-point rebuttal from a competent witness with full ledger disclosure, the Original Instruments(s) or Certified Copies and not a basic account statement, or copy of the RISC, the facts stated herein stand as undisputed. You are ordered to cease and desist any unauthorized actions and provide written confirmation of compliance. Continued non-compliance necessitates legal enforcement.

**Jurat**

**EXHIBIT G**

**NOTICE OF CLASSIFICATION OBJECTION AND INTENT TO SUE**
**PRIVATE AUTOMOBILE – NOT FOR HIRE OR COMMERCIAL USE**
**TO: Oregon Department of Transportation – Driver & Motor Vehicle Services (DMV)**
**RE:** VIN# KL77LJEP6SC105268
**FROM: Marvin Jennings, in propria persona**
**DATE: March 27, 2025**

**FORWARD TO: LEGAL DEPARTMENT**

---

**Notice to Agent is Notice to Principal. Notice to Principal is Notice to Agent.**

To Whom It May Concern,

On February 16th , 2025, Claimant entered into a consumer credit transaction with M&N DEALERSHIPS VIII, LLC Dba MCLOUGHLIN CHEVROLET, deal # 30826, for the acquisition of a 2025 Chevy Trax VIN# KL77LJEP6SC105268,

This Notice is presented to formally and lawfully **object to the unauthorized classification** of my **private automobile** as a **commercial vehicle** within the Oregon DMV registry system, and to place your agency on **notice of liability** should you continue to engage in any such mischaracterization, demand for payment, or issuance of titles under false legal premises.

---

## I. PRIVATE STATUS OF CONSUMER PROPERTY

The conveyance referenced herein is **private property**, used exclusively for personal, household, and consumer purposes, and **is not engaged in commerce** as defined by Oregon or federal law.

As such, the **classification as a commercial vehicle** without my consent constitutes:

- **Unlawful conversion of property** in violation of **Article I, § 18** of the **Oregon Constitution**, which states:
  *"Private property shall not be taken for public use... without just compensation."*
- A violation of **Article I, Section 21** of the **Oregon Constitution**, prohibiting laws that **impair the obligations of contracts** or retroactively assign third-party interests to private property without due process.
- A violation of **U.S. Constitution, Amendment V**, known as the **Takings Clause**, for effecting a constructive taking of private property without just compensation, and **Amendments IV and XIV** for unlawful seizure, lack of due process, and arbitrary imposition of regulatory jurisdiction.

## II. FDCPA IMPLICATIONS – DMV ACTIONS CONSTITUTE UNLAWFUL COLLECTION ACTIVITY

By assigning a **security interest holder** (i.e., listing a lender on title) and demanding registration fees or taxes based on the commercial classification of a private automobile, **DMV is actively participating in a collection scheme** that is subject to federal oversight under the **Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 et seq.**, including:

- **False representation of legal status of a debt** (15 U.S.C. § 1692e);
- **Attempting to collect amounts not lawfully owed** (15 U.S.C. § 1692f);
- **Failing to validate debt before demanding payment** (15 U.S.C. § 1692g);
- **Participating in third-party debt collection without disclosure or court order;**
- **Public reporting or records that defame** or misrepresent consumer's financial obligations in the absence of an actual judgment.

Because DMV is facilitating or aiding in **debt enforcement activities under color of law**, your agency is now considered a **debt collector** by functional definition under 15 U.S.C. § 1692a(6), and is therefore subject to federal liability for each violation.

## III. DEMAND TO CORRECT & CEASE UNLAWFUL ACTIONS

You are hereby instructed to:

1. **Cease and desist** from misclassifying the referenced automobile as commercial;
2. **Remove any lender or lienholder from the title** unless proper legal authority and contract are produced showing Claimant's consent;
3. **Acknowledge by affidavit** the private use status of the property;
4. **Provide proof of legal authority or statutory consent** for DMV to register, title, or encumber private consumer goods under commercial classification;
5. Refrain from sending any further billing or collections related to registration, licensing, or compliance, **unless backed by a lawful order or judgment.**

## IV. NOTICE OF INTENT TO SUE

Be advised that failure to correct this record and withdraw any encumbrance or classification without proper legal basis will result in the filing of a **federal civil claim** and/or **state tort action** for:

- **Conversion of private property**
- **Defamation of character and credit**

- **Violation of state and federal constitutional rights**
- **Violation of FDCPA and Regulation F**
- **Unlawful participation in debt collection practices without license or jurisdiction**

This Notice shall serve as formal **preservation of claims** and **intent to sue**, and any further violation will be used as evidence of **willful misconduct**, **gross negligence**, and **bad faith enforcement**.

## V. RESERVATION OF RIGHTS

All rights reserved, none waived. Nothing in this correspondence shall be construed as a waiver of any rights under:

- Oregon Constitution, Art. I §§ 10, 18, and 21
- United States Constitution, Article I § 10 and Amendments IV, V, and XIV
- 15 U.S.C. §§ 1692 – 1692p (FDCPA)
- 12 C.F.R. Part 1006 (Regulation F)

Please respond in writing within ten (10) days of receipt. Failure to respond shall be deemed an **admission of all claims asserted herein** and consent to immediate legal action.

**Sincerely,**
**Marvin Jennings**
in propria persona
c/o 13215 SE Mill Plain Blvd, Suite C8-413
Vancouver, Washington [98684]
Non-Domestic / Without the United States
(All rights reserved)

## NOTARY JURAT

I, **Marvin Jennings**, do hereby swear and affirm under penalty of perjury under the laws of the United States of America that the foregoing is true, correct, and complete to the best of my knowledge and belief.

Executed this 27th day of March, 2025.

**Signature:** By: [signature] in trust
**Printed Name:** Marvin Jennings

State of WASHINGTON
County of CLARK

Subscribed and sworn before me this 21 day of March, 2025,
by **Marvin Jennings**.

**Notary Public Signature:** [illegible]
**My Commission Expires:** May 17, 2027
[Seal]

# ATTATCHMENT H

**6243481 MISC**
Total Pages:24 Rec: $376.50
Recorded in Clark County, WA
4/16/2025 4:10 PM
MARVIN JENNINGS JR

RETURN ADDRESS

13215 SE Mill Plain C8-413

Vancuver, Washington Republic

Please print neatly or type information

**Document Title(s)**

Miscellaneous

**Reference Number(s) of related documents:**

Jenning, Marvin

Additional Reference #'s on page ____

**Grantor(s)** (Last name, First name and Middle Initial)

King Eastlin Express trust

Additional grantors on page ____

**Grantee(s)** (Last name, First name and Middle Initial)

Additional grantees on page ____

**Legal Description:** (abbreviated form: i.e. lot, block, plat or section township, range, quarter/quarter)

Additional legal is on page ____

**Assessor's Property Tax Parcel/Account Number**

Additional parcel #'s on page ____

The Auditor/Recorder will rely on the information provided on this form. The staff will not read the document to verify the accuracy or completeness of the indexing information provided herein.

**I am requesting an emergency nonstandard recording for an additional fee as provided in RCW 36.18.010. I understand that the recording process may cover up or otherwise obscure some part of the text of the original document.**

[signature] in trust ARR

Signature of Requesting Party

Unofficial Copy

[redacted]

UCC FINANCING STATEMENT Miscellaneus
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
King Eastlin Express Trust

B. E-MAIL CONTACT AT FILER (optional)
Kingeastlintrust@gmail.com

C. SEND ACKNOWLEDGMENT TO: (Name and Address)
King Eastlin Express Trust
c/o 13215 se mill plain blvd
Ste C8-413
VANCOUVER WA USA 98684

Date of Filing : 04/15/2025
Time of Filing : 02:41:00 AM
File Number : 2025-105-2371-4
Lapse Date : 04/15/2030

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

1a. ORGANIZATION'S NAME:

OR

| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| JENNINGS | MARVIN | | Jr |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 13215 se mill plain blvd, Ste C8 | VANCOUVER | WA | 98684 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

2a. ORGANIZATION'S NAME:

OR

| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

3a. ORGANIZATION'S NAME: King Eastlin Express Trust

OR

| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 13215 se mill plain blvd, Ste C8 | VANCOUVER | WA | 98684 | USA |

Unofficial COPY

4. COLLATERAL: This financing statement covers the following collateral:

**SPECIAL DEPOSIT**
**Make: Chevrolet**
**Model- Trax**
**Year- 2025**
**VIN: KL77LJEP6SC105268**
**Stock Number: PC25053X**
**Total Retail Installment Sale Amount: 65257.12 USD**
**Collateral Type: Private Consumer Goods**
**Referenced Documents:**
**Document H - Notice of Claim**
**Document A - Endorsed Retail Installment Sales Contract (RISC)**

5. Check only if applicable and check only one box: Collateral is ☑ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box: ☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box: ☐ Agricultural Lien ☑ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☑ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
MC-S-MJ-KEET-1-CR-NOCOTC

~~UCC FINANCING STATEMENT~~ **ADDENDUM** Miscellaneous

FOLLOW INSTRUCTIONS

Date of Filing : 04/15/2025
Time of Filing : 02:41:00 AM
File Number : 2025-105-2371-4
Lapse Date : 04/15/2030

9. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

9a. ORGANIZATION'S NAME

OR 9b. INDIVIDUAL'S SURNAME: JENNINGS

FIRST PERSONAL NAME: MARVIN

ADDITIONAL NAME(S)/INITIAL(S): Jr | SUFFIX:

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

10. DEBTOR'S NAME: Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

10a. ORGANIZATION'S NAME

OR 10b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

Unofficial Copy

11. ☑ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

11a. ORGANIZATION'S NAME

| OR 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| Jennings | Marvin | amarea wade | |

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 13215 se mill plain blvd c8- 413 | VANCOUVER | WA | 98684 | USA |

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):

13. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable)

14. This FINANCING STATEMENT: ☐ covers timber to be cut ☐ covers as-extracted collateral ☐ is filed as a fixture filing

15. Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest):

16. Description of real estate:

17. MISCELLANEOUS:
King Eastlin

Continuation of section 4 collateral

4. This FINANCING STATEMENT covers the following collateral:

(Non-Negotiable)
This filing provides notice of a private claim by Marvin Jennings, secured party, entitlement holder, and beneficiary. The filing does not establish a debtor-creditor relationship. It gives notice of an instrument tendered for value, accepted for value, and returned for value under trust.
M and N Dealerships VIII LLC dba McLoughlin Chevrolet, Santander Consumer USA Inc, and Oregon Department of Transportation are under obligation to perform under the terms of the tender. This includes responding to the demand for adequate assurance of performance and resolving any material breach.
The original instrument was restrictively endorsed as follows: Pay to the order of M and N Dealerships VIII LLC dba McLoughlin Chevrolet In Trust For Collection. The endorsement was witnessed and notarized before the instrument was delivered to the dealer and assignee. No objection or dishonor was made. Any party acquiring the instrument or attempting to enforce it takes subject to these same conditions, obligations, and equities.
Previously served notices were sent as follows-
To McLoughlin Chevrolet – USPS Certified Tracking Number 9514706671615086900195, delivered on or about 03/31/2025
To Santander Consumer USA – USPS Certified Tracking Number 9514706671615086900218, delivered on or about 04/02/2025
To Oregon DMV Headquarters – USPS Certified Tracking Number 9514706671615086900232, delivered on or about 03/31/2025
Any assignment, transfer, or enforcement action without judicial order or rebuttal to this filing and supporting documents is a repudiation of the original agency obligations and may be considered wrongful.

Unofficial Copy

# RECORDING COVER SHEET – RCW 65.04 COMPLIANCE

Document Title: Notice of Claim

Reference Document #: N/A (New Filing)

Grantor(s): Marvin Jennings

Grantee(s): McLoughlin Chevrolet, Santander Consumer USA Inc., Oregon DMV

Abbreviated Legal Description: Private consumer transaction involving VIN KL77LJEP6SC105268, Stock No. PC25053X

Assessor's Parcel Number (APN): N/A

Additional Reference Info: UCC-1 Financing Statement, Filed in Washington, and Oregon SOS – See Attached

Unofficial copy

This cover sheet is submitted in accordance with RCW 65.04.045 and RCW 36.18.010 to ensure compliance with margin and indexing requirements of the Clark County Auditor's Office.

Prepared by:

Marvin Jennings

c/o 13215 SE Mill Plain Blvd, Suite C8-413

Vancouver, Washington [98684]

Unofficial Copy

## NOTICE OF CLAIM

Marvin Jennings
c/o 13215 SE Mill Plain Blvd, Suite C8-413
Vancouver, Washington [98684]
Date: 10th of April 2025

Clark County Recording Office
1300 Franklin St
Vancouver, WA 98660

Unofficial Copy

RE: Notice of Claim — Request for Recording

Dear Clerk of the Court:

Please find enclosed a document titled 'Notice of Claim' for acceptance into the public record, along with the attached UCC-1 Financing Statement(s), UCC-3 Addendum(s) and Supplemental Legal Basis. The enclosed materials are submitted in accordance with Clark County's standards for legal notices and commercial lien-related documents.

This filing provides lawful notice of a private claim arising from a consumer credit transaction, supported by both constitutional protections and applicable commercial statutes. All documents are submitted for informational and lawful recording purposes only, with no expectation of judicial action by the Clerk's Office.

Thank you for processing this request.

Respectfully,
Verified By: Marvin Jennings
ALL RIGHTS RESERVED WITHOUT WAIVER

Unofficial Copy

## NOTICE OF CLAIM

This Notice of Claim is also a Notice of Default, and Opportunity to Cure.

This document is recorded strictly for lawful notice purposes and does not constitute a court action. It is intended to memorialize the original intent of the Grantor—here acting as Claimant—and to rebut any presumption of abandonment or relinquishment of title, interest, or proceeds arising from the original monetary instrument(s) tendered to fund the underlying account..

The secured party hereby provides notice of a perfected interest and unresolved default concerning the subject matter referenced below:

VIN: KL77LJEP6SC105268

Stock No.: PC25053X

Endorsed Non-Negotiable Copy of the RISC (Retail Installment Sale Contract)
#9514 7066 7161 5086 9001 95

Previously Served Documents: See Attachment List Below

[ATTACHMENT A – G INDEX]

Document A: Endorsed Non-Negotiable Copy of the RISC #9514 7066 7161 5086 9001 95
Document B: Copy of Vehicles Buyers Order
Document C Copy of VITU OR DMV
Document D: Conditional Acceptance MC-S-MJ-KEET-1-CA
Document E: Affidavit of Ledger and Accounting MC-SA-MJ-KEET-AOL-1
Document F: Notice of Rescission MC-S-MJ-KEET-1-NOR
Document G: DMV Notice of Title Classification Objection and Claim MC-S-MJ-KEET-1-DMV
Document H: Response Letter from Dealership (Dated April 3, 2025)
Document I: This Filing – Notice of Claim UCC11 search ,UCC1 filing statement,UCC3 filing statement Add, MC-S-MJ-KEET-1-CR-NOCOTC

### PROOF OF SERVICE & DELIVERY RECORD

This page serves as formal documentation of certified mailing and service of prior correspondence (Documents A–G) as listed in the attached filing titled 'Notice of Claim.'

Unofficial Copy

Unofficial Copy

These documents were delivered via the United States Postal Service (USPS) with certified tracking numbers to the following parties:

To McLoughlin Chevrolet
Location: Milwaukie, OR 97267
USPS Certified Tracking #: 9514 7066 7161 5086 9001 95
Estimated Delivery Date: 03/31/2025

To Santander Consumer USA
Location: Dallas, TX 75201
USPS Certified Tracking #: 9514 7066 7161 5086 9002 18
Estimated Delivery Date: 04/02/2025

To Oregon DMV
Location: Salem, OR 97314
USPS Certified Tracking #: 9514 7066 7161 5086 9002 32
Estimated Delivery Date: 03/31/2025

Unofficial Copy

## I. CONSTITUTIONAL PROTECTIONS

This claim is supported by the secured party's unalienable and constitutionally protected private rights, including the right to contract, own and enjoy private property, and pursue redress and remedy. These rights are preserved by the following constitutional provisions:

- U.S. Constitution: 1st, 4th, 5th, 9th, and 10th Amendments
- Washington Constitution, Article I §§ 1, 3, 7, 16
- Oregon Constitution, Article I §§ 1, 8, 10, 18, 20

The private right to contract is upheld under the Contracts Clause (Article I, Section 10 of the U.S. Constitution), which prohibits the states from impairing the obligation of contracts. These rights are superior to statutory provisions and operate as self-executing guarantees of liberty, property, and private commercial autonomy.

Unofficial Copy

## II. STATUTORY AUTHORITIES SUPPORTING THE CLAIM

- ORS 73.0206 / RCW 62A.3-206 – Restrictive Endorsements
- ORS 73.0311 / RCW 62A.3-311 – Preservation of Defenses & Accord and Satisfaction
- ORS 79.0102(1)(a) / RCW 62A.9A-102 – Consumer Goods Definition
- ORS 79.0626(1) / RCW 62A.9A-609 – Repossession Restrictions
- ORS 73.0307 / RCW 62A.3-307 – Fiduciary Obligation Notice
- 16 CFR § 433.2 – FTC Holder Rule
- 15 U.S.C. § 1692 et seq. – Fair Debt Collection Practices Act
- 15 U.S.C. § 1681 et seq. – Fair Credit Reporting Act

## III. PURPOSE AND SCOPE OF THIS NOTICE

This filing is submitted for lawful public recordation, evidencing the secured party's perfected interest, standing, and demand for cure. It serves as notice to any public or private party attempting unauthorized claims, collection, or repossession of the property described herein. The private trust status and tender of performance are matters of record. No additional consent is given. Any contrary action may result in legal action for trespass, conversion, and damages.

## IV. ESTOPPEL BY DEFAULT AND CONSTITUTIONAL STANDING

All named grantees are hereby notified that failure to lawfully respond within ten (10) calendar days by sworn affidavit constitutes final agreement by acquiescence and establishes estoppel in both law and equity.

Unofficial Copy

Unofficial Copy

This record is supported by self-executing constitutional protections, including but not limited to:

- U.S. Const. Amend. IV & V – Right to privacy and protection against taking of private property;
- Wash. Const. Art. I, §§ 3, 7, 16 – Due process, privacy, and private property rights;
- Or. Const. Art. I, §§ 1, 8, 18 – Natural rights, redress, and protection from unlawful takings. In absence of verified rebuttal, the secured party's perfected interest and private rights stand as unopposed and enforceable.

These records confirm lawful notice and service of documents and preserve the Claimant's rights under state and federal law.

Respectfully Submitted,
Verified By: Marvin Jennings
ALL RIGHTS RESERVED WITHOUT WAIVER

Unofficial Copy

**JURAT**
**State of Washington**
**County of Clark**

Subscribed and sworn to before me on this 10th day of April, 2025, by **Marvin Jennings**, known to me or satisfactorily proven to be the signer of the foregoing instrument.

**Signature of Notary Public:** Arthur R Hardy II
**Printed Name:** Arthur R Hardy II
**My commission expires:** May 17, 2027
*(Seal)*

ARTHUR R HARDY
NOTARY
My Comm. Expires
May 17, 2027
No. 23017223
PUBLIC
STATE OF WASHINGTON

Unofficial Copy




# RETAIL INSTALLMENT CONTRACT - SIMPLE FINANCE CHARGE
## (WITH ARBITRATION PROVISION)

| Buyer Name and Address (Including County and Zip Code) | Co-Buyer Name and Address (Including County and Zip Code) | Seller-Creditor (Name and Address) |
|---|---|---|
| MARVIN WADE JENNINGS<br>9500 NE 5TH ST<br>VANCOUVER WA 98664<br>CLARK<br>Cell: (360)909-4114<br>Email: kingmawjj@gmail.com | N/A<br><br>N/A<br>Cell: N/A<br>Email: N/A | MCLOUGHLIN CHEVROLET<br>16700 SE MCLOUGHLIN BOULEVARD<br>MILWAUKIE OR 97267 |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements in this contract. You agree to pay the Seller - Creditor (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used | Year | Make and Model | Odometer | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|---|
| NEW | 2025 | CHEVROLET TRUCK TRAX | 9 | KL77LJEP6SC105268 | Personal, family, or household unless otherwise indicated below<br>☐ business<br>☐ agricultural ☐ N/A |

**FEDERAL TRUTH-IN-LENDING DISCLOSURES**

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. | Total Sale Price<br>The total cost of your purchase on credit, including your down payment of $ 1000.00 is |
|---|---|---|---|---|
| 29.41 % | $ 34571.51 | $ 29685.61 | $ 64257.12 | $ 65257.12 |

**Your Payment Schedule Will Be:** (e) means an estimate

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 72 | $ 892.46 | MONTHLY beginning 04/02/2025 |
| N/A | $ N/A | N/A |
| N/A | | |

**Late Charge.** If payment is not received in full within 10 days after it is due, you will pay a late charge of 5 % of the part of the payment that is late.
**Prepayment.** If you pay early, you will not have to pay a penalty.
**Security Interest.** You are giving a security interest in the vehicle being purchased.
**Additional Information:** See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date and security interest.

**Returned Payment Charge:** You agree to pay a charge of $ 35.00 if any check or electronic payment you make is returned unpaid.

***The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.***

**Used Car Buyers Guide.** The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.
**Spanish Translation:** Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

☐ **VENDOR'S SINGLE INTEREST INSURANCE (VSI insurance):** If the preceding box is checked, the Creditor requires VSI insurance for the initial term of the contract to protect the Creditor for loss or damage to the vehicle (collision, fire, theft, concealment, skip). VSI insurance is for the Creditor's sole protection. This insurance does not protect your interest in the vehicle. You may choose the insurance company through which the VSI insurance is obtained. If you elect to purchase VSI insurance through the Creditor, the cost of this insurance is $ N/A and is also shown in Item 4B of the Itemization of Amount Financed. The coverage is for the initial term of the contract.

**SERVICING AND COLLECTION CONTACTS**
In consideration of our extension of credit to you, you agree to provide us your contact information for our servicing and collection purposes. You agree that we may use this information to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you. You agree to allow our agents and service providers to contact you as agreed above.
You agree that you will, within a reasonable time, notify us of any change in your contact information.

**Agreement to Arbitrate:** By signing below, you agree that, pursuant to the Arbitration Provision on page 4 of this contract, you or we may elect to resolve any dispute by neutral, binding arbitration and not by a court action. See the Arbitration Provision for additional information concerning the agreement to arbitrate.

Buyer Signs X [signature] Co-Buyer Signs X N/A

Unofficial Copy



**ITEMIZATION OF AMOUNT FINANCED**

1. Cash Price (including $ 2207.11 sales tax) $ 27006.11 (1)

2. Total Downpayment =
   Trade-In N/A
   (Year) (Make) (Model)
   Gross Trade-In Allowance $ N/A
   Less Pay Off Made By Seller to N/A $ N/A
   Equals Net Trade In $ N/A
   + Cash $ 1000.00
   + Other N/A $ N/A
   + Other N/A $ N/A
   + Other N/A $ N/A
   (If total downpayment is negative, enter "0" and see 4I below) $ 1000.00 (2)

3. Unpaid Balance of Cash Price (1 minus 2) $ 26006.11 (3)

4. Other Charges Including Amounts Paid to Others on Your Behalf (Seller may keep part of these amounts):
   A. Cost of Optional Credit Insurance Paid to Insurance Company or Companies.
      Life $ N/A
      Disability $ N/A $ N/A
   B. Vendor's Single Interest Insurance Paid to Insurance Company $ N/A
   C. Other Optional Insurance Paid to Insurance Company or Companies $ N/A
   D. Official Fees Paid to Government Agencies
      to N/A for N/A $ N/A
      to N/A for N/A $ N/A
      to N/A for N/A $ N/A
   E. Optional Gap Contract $ N/A
   F. Government Taxes Not Included in Cash Price $ N/A
   G. Government License and/or Registration Fees
      LICENSE FEES450
      ADMIN FEES2.50/ARB FEES3 $ 455.50
   H. Government Certificate of Title Fees $ 25.00
   I. Other Charges (Seller must identify who is paid and describe purpose)
      to N/A for Prior Credit or Lease Balance $ N/A
      to MCLOUGHLIN CHEVR for TIT/REG PROCESS FEE $ 200.00
      to ALLY for ALLY AUTO CARE TM $ 2999.00
      to N/A for N/A $ N/A
      to N/A for N/A $ N/A
      to N/A for N/A $ N/A
      to N/A for N/A $ N/A
      to N/A for N/A $ N/A
      to N/A for N/A $ N/A
      to N/A for N/A $ N/A
      to N/A for N/A $ N/A
      to N/A for N/A $ N/A
      to N/A for N/A $ N/A
   Total Other Charges and Amounts Paid to Others on Your Behalf $ 3679.50 (4)

5. Amount Financed (3 + 4) $ 29685.61 (5)

**OPTION:** ☐ You pay no finance charge if the Amount Financed, item 5, is paid in full on or before N/A , Year N/A . SELLER'S INITIALS N/A

**OPTIONAL GAP CONTRACT.** A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. Your decision to buy or not buy a gap contract will not affect the credit terms or our decision to sell the vehicle or extend credit to you. If you choose to buy a gap contract, the charge is shown in line item 4E of the Itemization of Amount Financed. See your gap contract for details on the terms and conditions it provides. It is a part of this contract.

Term N/A Mos. N/A
Name of Gap Contract
I want to buy a gap contract.
Buyer Signs X N/A

Insurance. You may buy the physical damage insurance this contract requires from anyone you choose who is acceptable to us. You may also provide the physical damage insurance through an existing policy owned or controlled by you that is acceptable to us. You are not required to buy any other insurance to obtain credit.

If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

Check the insurance you want and sign below:

**Optional Credit Insurance**

☐ Credit Life: ☐ Buyer ☐ Co-Buyer ☐ Both
☐ Credit Disability: ☐ Buyer ☐ Co-Buyer ☐ Both
Premium:
Credit Life $ N/A
Credit Disability $ N/A
Insurance Company Name N/A
N/A
Home Office Address N/A
N/A

Credit life insurance and credit disability insurance are not required to obtain credit. Your decision to buy or not buy credit life insurance and credit disability insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. If you choose this insurance, the cost is shown in Item 4A of the Itemization of Amount Financed. Credit life insurance is based on your original payment schedule. This insurance may not pay all you owe on this contract if you make late payments. Credit disability insurance does not cover any increase in your payment or in the number of payments. Coverage for credit life insurance and credit disability insurance ends on the original due date for the last payment unless a different term for the insurance is shown below.

**Other Optional Insurance**

☐ N/A N/A
Type of Insurance Term
Premium $ N/A
Insurance Company Name N/A
N/A
Home Office Address N/A
N/A

☐ N/A N/A
Type of Insurance Term
Premium $ N/A
Insurance Company Name N/A
N/A
Home Office Address N/A
N/A

Other optional insurance is not required to obtain credit. Your decision to buy or not buy other optional insurance will not be a factor in the credit approval process. It will not be provided unless you sign and agree to pay the extra cost.

I want the insurance checked above.

X N/A N/A
Buyer Signature Date

X N/A N/A
Co-Buyer Signature Date

**THIS INSURANCE DOES NOT INCLUDE INSURANCE ON YOUR LIABILITY FOR BODILY INJURY OR PROPERTY DAMAGE CAUSED TO OTHERS.**




Buyer Initials X M.J. Co-Buyer Initials X N/A

Unofficial Copy






## OTHER IMPORTANT AGREEMENTS

**1. FINANCE CHARGE AND PAYMENTS**

a. **How we will figure Finance Charge.** We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed.

b. **How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order we choose as the law allows.

c. **How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on page 1 of this contract on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.

d. **You may prepay.** You may prepay all or part of the unpaid part of the Amount Financed at any time without penalty. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment.

**2. YOUR OTHER PROMISES TO US**

a. **If the vehicle is damaged, destroyed, or missing.** You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.

b. **Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.

c. **Security Interest.**
You give us a security interest in:
- The vehicle and all parts or goods put on it;
- All money or goods received (proceeds) for the vehicle;
- All insurance, maintenance, service, or other contracts we finance for you; and
- All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.

This secures payment of all you owe on this contract. It also secures your other agreements in this contract. You will make sure the title shows our security interest (lien) in the vehicle. You will not allow any other security interest to be placed on the title without our written permission.

d. **Insurance you must have on the vehicle.**
You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. You agree to name us on your insurance policy as loss payee.

**WARNING**
Unless you provide us with evidence of the insurance coverage as required by our contract or loan agreement, we may purchase insurance at your expense to protect our interest. This insurance may, but need not, also protect your interest. If the collateral becomes damaged, the coverage we purchase may not pay any claim you make or any claim made against you. You may later cancel this coverage by providing evidence that you have obtained property coverage elsewhere.

You are responsible for the cost of any insurance purchased by us. The cost of this insurance may be added to your contract. If the cost is added to your contract, the interest rate on the underlying contract will apply to this added amount. The effective date of coverage may be the date your prior coverage lapsed or the date you failed to provide proof of coverage.

The coverage we purchase may be considerably more expensive than insurance you can obtain on your own and may not satisfy any need for property damage coverage or any mandatory liability insurance requirements imposed by applicable law.

If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.

e. **What happens to returned insurance, maintenance, service, or other contract charges.** If we get a refund of insurance, maintenance, service, or other contract charges, you agree that we may subtract the refund from what you owe.

**3. IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES**

a. **You may owe late charges.** You will pay a late charge on each late payment as shown on page 1 of this contract. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments. If you pay late, we may also take the steps described below.

b. **You may have to pay all you owe at once.** If you break your promises (default), we may demand that you pay all you owe on this contract at once. Default means:
- You do not pay any payment on time;
- You give false, incomplete, or misleading information during credit application;
- You start a proceeding in bankruptcy or one is started against you or your property; or
- You break any agreements in this contract.

The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.

c. **You may have to pay collection costs.** If we refer this contract for collection to an attorney who is not our salaried employee, you will pay the attorney's fee, plus the court costs and disbursements. You will also pay any collection costs we incur as the law allows.

d. **We may take the vehicle from you.** If you default, we may take (repossess) the vehicle from you if we do so peacefully and the law allows it. If your vehicle has an electronic tracking device (such as GPS), you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you. If you do not ask for these items back, we may dispose of them as the law allows.

e. **How you can get the vehicle back if we take it.** If we repossess the vehicle, you may pay to get it back (redeem). We will tell you how much to pay to redeem. Your right to redeem ends when we sell the vehicle.

f. **We will sell the vehicle if you do not get it back.** If you do not redeem, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle. We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. Attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you must pay the rest to us, unless the law provides otherwise. If you do not pay this amount when we ask, we may charge you interest at a rate not exceeding the highest lawful rate until you pay.

g. **What we may do about optional insurance, maintenance, service, or other contracts.** This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, you agree that we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

**4. WARRANTIES SELLER DISCLAIMS**

**The following paragraph does not affect any warranties covering the vehicle that the vehicle manufacturer may provide. The following paragraph also does not apply at all if the vehicle is a new vehicle you bought primarily for personal, family, or household use.**

**Unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.**

**5. APPLICABLE LAW**

Federal law and the law of the state of Oregon apply to this contract.

**6. NEGATIVE CREDIT REPORT NOTICE**

**We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.**

Buyer Initials X M.J. Co-Buyer Initials X N/A

Unofficial Copy






**ARBITRATION PROVISION**
**PLEASE REVIEW - IMPORTANT - AFFECTS YOUR LEGAL RIGHTS**

1. **EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN YOU AND US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.**
2. **IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.**
3. **DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.**

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, any allegation of waiver of rights under this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this Vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Provision shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator only on an individual basis and not as a plaintiff in a collective or representative action, or a class representative or member of a class on any class claim. The arbitrator may not preside over a consolidated, representative, class, collective, injunctive, or private attorney general action. You expressly waive any right you may have to arbitrate a consolidated, representative, class, collective, injunctive, or private attorney general action. You or we may choose the American Arbitration Association (www.adr.org) or National Arbitration and Mediation (www.namadr.com) as the arbitration organization to conduct the arbitration. If you and we agree, you or we may choose a different arbitration organization. You may get a copy of the rules of an arbitration organization by contacting the organization or visiting its website.

Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law and the applicable statute of limitations. The arbitration hearing shall be conducted in the federal district in which you reside unless the Seller-Creditor is a party to the claim or dispute, in which case the hearing will be held in the federal district where this transaction was originated. We will pay the filing, administration, service, or case management fee and the arbitrator or hearing fee up to a maximum of $5,000, unless the law or the rules of the chosen arbitration organization require us to pay more. You and we will pay the filing, administration, service, or case management fee and the arbitrator or hearing fee over $5,000 in accordance with the rules and procedures of the chosen arbitration organization. The amount we pay may be reimbursed in whole or in part by decision of the arbitrator if the arbitrator finds that any of your claims is frivolous under applicable law. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. If the chosen arbitration organization's rules conflict with this Arbitration Provision, then the provisions of this Arbitration Provision shall control. Any arbitration under this Arbitration Provision shall be governed by the Federal Arbitration Act (9 U.S.C. §§ 1 et seq.) and not by any state law concerning arbitration. Any award by the arbitrator shall be in writing and will be final and binding on all parties, subject to any limited right to appeal under the Federal Arbitration Act.

You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate any related or unrelated claims by filing any action in small claims court, or by using self-help remedies, such as repossession, or by filing an action to recover the vehicle, to recover a deficiency balance, or for individual or statutory public injunctive relief. Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Provision shall survive any termination, payoff or transfer of this contract. If any part of this Arbitration Provision, other than waivers of class rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. You agree that you expressly waive any right you may have for a claim or dispute to be resolved on a class basis in court or in arbitration. If a court or arbitrator finds that this class arbitration waiver is unenforceable for any reason with respect to a claim or dispute in which class allegations have been made, the rest of this Arbitration Provision shall also be unenforceable.

**HOW THIS CONTRACT CAN BE CHANGED.** This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding. Buyer Signs X ________ Co-Buyer Signs X N/A

If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.

See the rest of this contract for other important agreements. SANTANDER CONSUMER USA

**NOTICE:** The seller intends to sell this contract to PO BOX 961288 FT WORTH TX 76161 ________ which, if it buys the contract, will become the owner of the contract and your creditor. After the sale of this contract, all questions concerning either terms of the contract or payments should be directed to the buyer of the contract at the address indicated above.

**NOTICE TO THE BUYER**

**Do not sign this contract before you read it or if it contains any blank space, except that:**
**(1) if delivery of the motor vehicle or mobile home is to be made to you after this contract is signed, the serial number or other identifying information and the due date of the first installment may be filled in at the time of delivery; and**
**(2) if the name of the financing agency is not known at the time the contract is executed, the name of the financing agency may be inserted in the contract on or about the date the name of the financing agency is known.**
**You are entitled to a copy of this contract.**
**You have the right to pay in advance the full amount due and if you do so you may save a portion of the finance charge.**

**CONSUMER PAPER**

**You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You acknowledge that you have read all pages of this contract, including the arbitration provision above, before signing below. You confirm that you received a completely filled-in copy when you signed it.**

**RETAIL INSTALLMENT CONTRACT**

Buyer Signs X ________ Date 02/16/25 Co-Buyer Signs XN/A ________ Date N/A
Buyer Printed Name MARVIN WADE JENNINGS Co-Buyer Printed Name N/A
If the "business" use box is checked in "Primary Use for Which Purchased": Print Name N/A ________ Title N/A

Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other owner signs here XN/A ________ Address N/A
Seller signs MCLOUGHLIN CHEVROLET ________ Date 02/16/25 By X ________ Title BUSINESS MGR

Seller assigns its interest in this contract to SANTANDER CONSUMER USA ________ (Assignee) under the terms of Seller's agreement(s) with Assignee.
☐ Assigned with recourse XX Assigned without recourse ☐ Assigned with limited recourse
Seller MCLOUGHLIN CHEVROLET
By X ________ Title BUSINESS MGR

p

PAY TO THE ORDER OF M&N DEALERSHIPS VIII, LLC
Dba Mcloughlin Chevrolet
"FOR COLLECTION"
"IN TRUST"
REDEEMED IN LAWFUL MONEY
Pursuant to 12 U.S.C. 411,412
By: [signature] Marvin Jennings
ARI, A.I.F

Unofficial Copy

**JURAT**
**State of Washington**
**County of Clark**

Subscribed and sworn to before me on this 16th day of April, 2025, by **Marvin Jennings**, known to me or satisfactorily proven to be the signer of the foregoing instrument.

**Signature of Notary Public:** [signature]
**Printed Name:** Arthur R Hardy II
**My commission expires:** May 17, 2027
*(Seal)*

ARTHUR R HARDY II
NOTARY PUBLIC
My Comm. Expires May 17, 2027
No. 23017228
STATE OF WASHINGTON



**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF OREGON**

**Marvin Jennings**, in propria persona

Plaintiff,

v.

**Santander Consumer USA Inc.**,
Defendant.

**CERTIFICATE OF SERVICE**

Civil Action No. ___________

I, Marvin Jennings, hereby certify that on this date___________, I served true and correct copies of the following documents:

- Verified Complaint
- Civil Cover Sheet (JS-44)
- Summons
- Motion for Temporary Restraining Order (TRO), Order to Show Cause, and Preliminary Injunction
- Proposed Order

upon Defendant **Santander Consumer USA Inc.** by placing the documents in the United States Mail, first-class postage prepaid, properly addressed as follows:

**Santander Consumer USA Inc.**

Attn: Legal Department

1601 Elm Street, Suite 800

Dallas, TX 75201

I certify under penalty of perjury that the foregoing is true and correct.

6/23/25

Executed on:

"in trust"

Respectfully submitted,
**/s/ Marvin Jennings**
Marvin Jennings, Plaintiff
c/o 13215 SE Mill Plain Blvd, Suite C8-413
Vancouver, WA 98684
All Rights Reserved – Without Prejudice

# UNITED STATES DISTRICT COURT
# DISTRICT OF OREGON
# PORTLAND DIVISION

Jennings, Marvin in Propria persona

**Claimant**

**v.**

Santander Consumer USA Inc.

**Respondent**

**SUBPOENA DUCES TECUM – DEMAND FOR ACCOUNTING, RESTITUTION, AND SETOFF**

**Case No. 3:25-cv-01052-AB**

## SUBPOENA DUCES TECUM – DEMAND FOR ACCOUNTING, RESTITUTION, AND SETOFF

TO: Santander Consumer USA Inc., Legal Department

You are hereby commanded under FRCP 45 and applicable equitable doctrines to produce and deliver to this Court and to Plaintiff within 10 days the following:

**1. GAAP-Compliant Accounting:**

- Full cash flow statements, account ledgers, and journal entries pertaining to Plaintiff's Retail Installment Sales Contract (RISC).
- Records satisfying GAAP matching principles showing offsetting liabilities and receivables.

**2. FASB / ASC 860 Disclosures:**

- All documents regarding recognition/derecognition of the RISC as a financial asset.

- Securitization, repurchase agreements, beneficial interest sales, or collateral pledging related to the instrument.

**3. Assignments and Chain of Title:**

- All assignments, indorsements, or sale documents showing chain of title to the instrument.
- Third-party servicing or trust pooling agreements.

**4. Receivables and Payables Matching:**

- Proof of both accounts payable and accounts receivable under Plaintiff's instrument.
- Transactional matching records evidencing credit, setoff, or advance.

**5. Four Elements of Contract Formation under Common Law:**

- Proof of lawful offer, acceptance, consideration, and mutual intent to contract under Oregon contract law and equity.

**6. Discovery Standards and Evidentiary Authority:** This demand is made under the five rules of discovery:

- **Relevance (FRCP 26(b)(1))**
- **Proportionality (FRCP 26(b)(2))**
- **Privilege exceptions (FRCP 26(b)(5))**
- **Duty to supplement (FRCP 26(e))**
- **Sanctions for non-compliance (FRCP 37)**

**FRE References (Supporting Compulsion of Firsthand Testimony):**

- FRE 602 (personal knowledge)
- FRE 1002 (best evidence rule)
- FRE 803(6) (business records exception)
- FRE 801–802 (exclusion of hearsay)

Failure to comply may result in sanctions, motion to compel, or a presumption in favor of the moving party.

Respectfully,

Marvin Jennings, in propria persona

"in trust"

# ATTATCHMENT I

**PROSPECTUS**

Santander Consumer USA

# $1,847,860,000

# Santander Drive Auto Receivables Trust 2025-1

**Issuing Entity**

**Central Index Key Number: 0002049903**

**Santander Drive Auto Receivables LLC**
**Depositor**
**Central Index Key Number: 0001383094**

**Santander Consumer USA Inc.**
**Sponsor and Servicer**
**Central Index Key Number: 0001540151**

**You should carefully read the risk factors set forth under "Risk Factors" beginning on page 13 of this prospectus.**

The notes are asset-backed securities. The notes will be the obligation solely of the issuing entity and will not be obligations of or guaranteed by Santander Consumer USA Inc., Santander Drive Auto Receivables LLC, the underwriters or any of their affiliates.

Santander Drive Auto Receivables Trust 2025-1 will issue the following asset-backed notes:

| | Initial Principal Amount | Interest Rate | Final Scheduled Payment Date (Payment Date In) | Price to Public[2] | Underwriting Discount | Proceeds to the Depositor |
|---|---|---|---|---|---|---|
| Class A-1 Notes[1] | $ 181,640,000 | 4.548% | January 2026 | | | |
| Class A-2 Notes | 674,710,000 | 4.76% | August 2027 | 99.99758% | 0.190% | 99.80758% |
| Class A-3 Notes | 456,920,000 | 4.74% | January 2029 | 99.99434% | 0.200% | 99.79434% |
| Class B Notes | 254,110,000 | 4.88% | March 2031 | 99.98031% | 0.210% | 99.77031% |
| Class C Notes | 213,630,000 | 5.04% | March 2031 | 99.97379% | 0.260% | 99.71379% |
| Class D Notes | 248,490,000 | 5.43% | March 2031 | 99.99295% | 0.280% | 99.71295% |
| Class E Notes[1] | 103,440,000 | 7.07% | May 2032 | | | |
| Total | $2,132,940,000 | | | $1,847,694,265.12 | $3,980,630.00 | $1,843,713,635.12 |

(1) The Class A-1 notes and the Class E notes are not being offered hereby and are anticipated to be either privately placed or retained by the depositor or another affiliate of SC. The Class A-1 notes and the Class E notes will be entitled to certain payments as described herein.

(2) Plus accrued interest, if any, from the closing date.

- The notes are payable solely from the assets of the issuing entity, which consist primarily of receivables, which are motor vehicle retail installment sale contracts and/or installment loans that are secured by new and used automobiles, heavy-duty trucks, light-duty trucks, SUVs and vans, substantially all of which are the obligations of "sub-prime" credit quality obligors, and funds on deposit in the reserve account.
- The issuing entity will pay interest on and principal of the notes on each payment date which will be the 15th day of each month, or, if the 15th day is not a business day, the next business day, starting on the payment date in February 2025.
- Credit enhancement for the notes will consist of overcollateralization, a reserve account funded with an initial amount of not less than 1.00% of the pool balance as of the cut-off date, excess interest on the receivables, and, in the case of each class of the offered notes, the subordination of certain payments to the noteholders of less senior classes of notes.
- The issuing entity will also issue non-interest bearing certificates representing the equity interest in the issuing entity, which are not being offered hereby.

**Neither the Securities and Exchange Commission nor any state securities commission has approved or disapproved of these notes or determined if this prospectus is truthful or complete. Any representation to the contrary is a criminal offense.**

The issuing entity is being structured so as not to constitute a "covered fund" as defined in the final regulations issued December 10, 2013, implementing the "Volcker Rule" (Section 619 of the Dodd-Frank Wall Street Reform and Consumer Protection Act).

**UNDERWRITERS**

**RBC Capital Markets** **Deutsche Bank Securities** **Santander** **SOCIETE GENERALE**

**Solely with respect to the Class A notes:**

**CastleOak Securities, L.P.** **Ramirez & Co., Inc.**

**The date of this prospectus is January 15, 2025.**

## SUMMARY OF STRUCTURE AND FLOW OF FUNDS

This structural summary briefly describes certain major structural components, the relationship among the parties, the flow of funds prior to an acceleration after an event of default and certain other material features of the transaction. This structural summary does not contain all of the information that you need to consider in making your investment decision. You should carefully read this entire prospectus to understand all the terms of this offering.

**Structural Diagram**




(1) Initially, SC will service the receivables held by the issuing entity. See "*The Servicer*".

(2) The certificates are not being offered hereby.

(3) The Class A-1 notes and the Class E notes are not being offered hereby.

## SUMMARY OF TERMS

*This summary provides an overview of selected information from this prospectus and does not contain all of the information that you need to consider in making your investment decision. This summary provides an overview of certain information to aid your understanding. You should carefully read this entire prospectus to understand all of the terms of this offering.*

### THE PARTIES

#### Issuing Entity

Santander Drive Auto Receivables Trust 2025-1, a Delaware statutory trust, will be the "**issuing entity**" of the notes. The primary assets of the issuing entity will be a pool of receivables, which are motor vehicle retail installment sale contracts and/or installment loans secured by new and used automobiles, heavy-duty trucks, light-duty trucks, SUVs and vans.

#### Depositor

Santander Drive Auto Receivables LLC, a Delaware limited liability company and a wholly-owned special purpose subsidiary of SC, is the "**depositor**." The depositor will sell the receivables to the issuing entity.

You may contact the depositor by mail at 1601 Elm Street, Suite 800, Dallas, Texas 75201, or by calling (214) 292-1930.

#### Sponsor

Santander Consumer USA Inc., an Illinois corporation known as "**SC**", is the "**sponsor**" of the transaction described in this prospectus.

#### Servicer

Initially, SC will service the receivables held by the issuing entity (in such capacity, the "**servicer**"). The servicer anticipates, subject to receipt of any necessary regulatory or other approvals, a reorganization of its servicing operations such that a majority of the motor vehicle receivable servicing currently performed by it (including as servicer of the receivables held by the issuing entity) will be performed by Santander Bank, N.A ("**SBNA**"). The servicer will be entitled to receive a servicing fee for each collection period. The "**servicing fee**" for any payment date will be an amount equal to the product of (1) 3.00%; (2) one-twelfth; and (3) the pool balance as of the first day of the related collection period (or as of the cut-off date, in the case of the first payment date). As additional compensation, the servicer will be entitled to retain all supplemental servicing fees and investment earnings (net of investment losses and expenses) from the investment of funds on deposit in the collection account and the reserve account, if any. The servicing fee, together with any portion of the servicing fee that remains unpaid from prior payment dates, will be payable on each payment date prior to payments to the noteholders from funds on deposit in the collection account with respect to the collection period preceding such payment date, including funds, if any, deposited into the collection account from the reserve account.

#### Originator

SC is the "**originator**" of the receivables. SC, as "**seller**," will sell all of the receivables to be included in the receivables pool to the depositor and the depositor will sell those receivables to the issuing entity.

#### Administrator

SC will be the "**administrator**" of the issuing entity, and in such capacity will provide administrative and ministerial services for the issuing entity.

The "**administration fee**" for any payment date will be an amount equal to the product of (1) 0.05%; (2) one-twelfth; and (3) the pool balance as of the first day of the related collection period (or as of the cut-off date, in the case of the first payment date). The administration fee, together with any portion of the administration fee that remains unpaid from prior payment dates, will be payable on each payment date prior to payments to the noteholders from funds on deposit in the collection account with respect to the collection period preceding such payment date, including funds, if any, deposited into the collection account from the reserve account.

#### Trustees

Citibank, N.A., a national banking association, will be the "**owner trustee**."

Citicorp Trust Delaware, National Association, a national banking association, will be the "**Delaware trustee**."

Wilmington Trust, National Association, a national banking association, will be the "**indenture trustee**."

**Asset Representations Reviewer**

Clayton Fixed Income Services LLC, a Delaware limited liability company, will be the "**asset representations reviewer**."

**THE OFFERED NOTES**

The issuing entity will issue and offer the following notes:

| Class | Initial Note Principal Amount | Interest Rate | Final Scheduled Payment Date (Payment Date In) |
|---|---|---|---|
| Class A-2 Notes | $ 674,710,000 | 4.76% | August 2027 |
| Class A-3 Notes | 456,920,000 | 4.74% | January 2029 |
| Class B Notes | 254,110,000 | 4.88% | March 2031 |
| Class C Notes | 213,630,000 | 5.04% | March 2031 |
| Class D Notes | 248,490,000 | 5.43% | March 2031 |

The issuing entity will also issue $181,640,000 of Class A-1 4.548% asset-backed notes and $103,440,000 of Class E 7.07% asset-backed notes, which are not being offered by this prospectus. The final scheduled payment date for the Class A-1 notes is the payment date in January 2026 and the final scheduled payment date for the Class E notes is the payment date in May 2032.

The Class A-1 notes and the Class E notes are not being publicly registered and are anticipated to be either privately placed or retained by the depositor or another affiliate of SC. Information about the Class A-1 notes and the Class E notes is set forth herein solely to provide a better understanding of the Class A-2 notes, the Class A-3 notes, the Class B notes, the Class C notes and the Class D notes.

We refer to the Class A-1 notes, the Class A-2 notes and the Class A-3 notes as the "**Class A notes**." We refer to the Class A notes, the Class B notes, the Class C notes, the Class D notes and the Class E notes, collectively, as the "**notes**." The Class A-2 notes, the Class A-3 notes, the Class B notes, the Class C notes and the Class D notes, which we collectively refer to as the "**offered notes**", are the only securities that are being offered by this prospectus.

The offered notes are issuable in a minimum denomination of $1,000 and in integral multiples of $1,000 in excess thereof, subject to certain exceptions set forth in the indenture. See "*The Notes—Delivery of Notes*" in this prospectus.

The issuing entity expects to issue the notes on or about January 22, 2025, which we refer to as the "**closing date**."

**THE CERTIFICATES**

On the closing date, the issuing entity will issue subordinated and non-interest bearing "**certificates**" in an aggregate notional principal amount of $100,000, which represent the equity interest in the issuing entity and are not offered hereby. The holders of the certificates, or "**certificateholders**", will be entitled on each payment date only to amounts remaining after payments on the notes and payments of issuing entity expenses and other required amounts on such payment date. The certificates will initially be held by the depositor, but the depositor may transfer all or a portion of the certificates to one of its affiliates or sell all or a portion of the certificates on or after the closing date. However, the portion of the certificates retained by the depositor or another majority-owned affiliate of SC to satisfy U.S. credit risk retention rules will not be sold, transferred, subjected to any credit risk mitigation or hedged except as permitted under, or in accordance with, those rules. See "*—Credit Risk Retention*."

**INTEREST AND PRINCIPAL**

To the extent of funds available, the issuing entity will pay interest and principal on the notes monthly, on the 15th day of each month (or, if that day is not a business day, on the next business day), which we refer to as the "**payment date**." The first payment date will be the payment date in February 2025. On each payment date or redemption date, payments on the notes will be made to holders of record as of the close of business on the business day immediately preceding that payment date or redemption date (except in limited circumstances where definitive notes are issued), which we refer to as the "**record date**."

**Interest Payments**

Interest on the Class A-1 notes will accrue from and including the prior payment date (or with respect to the first payment date, from and including the closing date) to but excluding the following payment date and will be due and payable on each payment date.

Interest on the Class A-2 notes, the Class A-3 notes, the Class B notes, the Class C notes, the Class D notes and the Class E notes will accrue from and including the 15th day of the calendar month

The credit enhancement for the notes will be as follows:

| | |
|---|---|
| Class A notes: | Subordination of payments on the Class B notes, the Class C notes, the Class D notes and the Class E notes, overcollateralization, the reserve account and excess interest on the receivables. |
| Class B notes: | Subordination of payments on the Class C notes, the Class D notes and the Class E notes, overcollateralization, the reserve account and excess interest on the receivables. |
| Class C notes: | Subordination of payments on the Class D notes and the Class E notes, overcollateralization, the reserve account and excess interest on the receivables. |
| Class D notes: | Subordination of payments on the Class E notes, overcollateralization, the reserve account and excess interest on the receivables. |
| Class E notes: | Overcollateralization, the reserve account and excess interest on the receivables. |

**Subordination of Payments on the Class B Notes**

As long as the Class A notes remain outstanding, payments of interest on any payment date on the Class B notes will be subordinated to payments of interest on the Class A notes and certain other payments on that payment date (including principal payments of the Class A notes in specified circumstances), and payments of principal of the Class B notes will be subordinated to all payments of principal of and interest on the Class A notes and certain other payments on that payment date. If the notes have been accelerated after an event of default under the indenture, the priority of these payments will change. For a description of these changes in priority, see "*—Interest and Principal—Payment of Principal and Interest after an Event of Default*" above and "*The Indenture—Priority of Payments Will Change Upon Events of Default that Result in Acceleration.*"

**Subordination of Payments on the Class C Notes**

As long as the Class A notes and the Class B notes remain outstanding, payments of interest on any payment date on the Class C notes will be subordinated to payments of interest on the Class A notes and the Class B notes and certain other payments on that payment date (including principal payments of the Class A notes and the Class B notes in specified circumstances), and payments of principal of the Class C notes will be subordinated to all payments of principal of and interest on the Class A notes and the Class B notes and certain other payments on that payment date. If the notes have been accelerated after an event of default under the indenture, the priority of these payments will change. For a description of these changes in priority, see "*—Interest and Principal—Payment of Principal and Interest after an Event of Default*" above and "*The Indenture—Priority of Payments Will Change Upon Events of Default that Result in Acceleration.*"

**Subordination of Payments on the Class D Notes**

As long as the Class A notes, the Class B notes and the Class C notes remain outstanding, payments of interest on any payment date on the Class D notes will be subordinated to payments of interest on the Class A notes, the Class B notes and the Class C notes and certain other payments on that payment date (including principal payments of the Class A notes, the Class B notes and the Class C notes in specified circumstances), and payments of principal of the Class D notes will be subordinated to all payments of principal of and interest on the Class A notes, the Class B notes and the Class C notes and certain other payments on that payment date. If the notes have been accelerated after an event of default under the indenture, the priority of these payments will change. For a description of these changes in priority, see "*—Interest and Principal—Payment of Principal and Interest after an Event of Default*" above and "*The Indenture—Priority of Payments Will Change Upon Events of Default that Result in Acceleration.*"

**Subordination of Payments on the Class E Notes**

As long as the Class A notes, the Class B notes, the Class C notes and the Class D notes remain outstanding, payments of interest on any payment date on the Class E notes will be subordinated to payments of interest on the Class A notes, the Class B notes, the Class C notes and the Class D notes and certain other payments on that payment date (including principal payments of the Class A notes,

expenses and indemnification amounts payable pursuant to this clause *first* may not exceed, in the aggregate, $300,000 per annum (prior to the occurrence of an event of default of the type described in the first, second or fifth bullet point under "—*Events of Default*" above);

- *second*, *pro rata*, to the servicer, the servicing fee (including servicing fees not previously paid) and to the administrator, the administration fee (including administration fees not previously paid);
- *third*, to the Class A noteholders, interest on the Class A notes, pro rata;
- *fourth*, to the noteholders, the First Allocation of Principal;
- *fifth*, to the Class B noteholders, interest on the Class B notes;
- *sixth*, to the noteholders, the Second Allocation of Principal;
- *seventh*, to the Class C noteholders, interest on the Class C notes;
- *eighth*, to the noteholders, the Third Allocation of Principal;
- *ninth*, to the Class D noteholders, interest on the Class D notes;
- *tenth*, to the noteholders, the Fourth Allocation of Principal;
- *eleventh*, to the Class E noteholders, interest on the Class E notes;
- *twelfth*, to the noteholders, the Fifth Allocation of Principal;
- *thirteenth*, to the reserve account, an amount required to cause the amount of cash on deposit in the reserve account to equal the Specified Reserve Account Balance;
- *fourteenth*, to the noteholders, the Regular Allocation of Principal;
- *fifteenth*, *pro rata*, to the indenture trustee, the Delaware trustee, the owner trustee and the asset representations reviewer, any accrued and unpaid fees, expenses and indemnification amounts not paid pursuant to clause *first* due solely to the per annum limitation set forth therein; and
- *sixteenth*, any funds remaining, to the certificateholders, pro rata based on the percentage interest of each certificateholder, or, to the extent definitive certificates have been issued, to the certificate distribution account for distribution to the certificateholders.

The First Allocation of Principal, Second Allocation of Principal, Third Allocation of Principal, Fourth Allocation of Principal, Fifth Allocation of Principal and Regular Allocation of Principal will be paid to the holders of the notes as described under "*The Notes—Payments of Principal*" in this prospectus.

**CREDIT ENHANCEMENT**

Credit enhancement provides protection for the notes against losses and delays in payment on the receivables or other shortfalls of cash flow. The credit enhancement for the notes will be the reserve account, overcollateralization, the excess interest on the receivables and, in the case of the Class A notes, the Class B notes, the Class C notes and the Class D notes, subordination of certain payments as described below. If the credit enhancement is not sufficient to cover all amounts payable on the notes, notes having a later final scheduled payment date generally will bear a greater risk of loss than notes having an earlier final scheduled payment date. See also "*The Transfer Agreements, the Servicing Agreement and the Administration Agreement—Overcollateralization*" and "*—Excess Interest*" in this prospectus.

# ATTATCHMENT J

Display by **TransUnion**

# 544

Needs Work

▼ **52 pts** checked daily




Scores calculated using VantageScore 3.0

**See what's changed**

**Credit changes summary**

There have been **recent changes** on your TransUnion credit report in the last month. It's a good time to check for updates.

**What changes have impacted my profile?**

**For you** | Cards | Loans | Insurance | Credit

1:49

INTUIT creditkarma

AUTO LOANS

**SBNA**

Reported: May 31, 2025

**$32,136.00**

**Needs Attention**

**Overview**

You have **100%** left to pay on this loan.

| | |
|---|---|
| Balance<br>$32136 | Highest Balance<br>$29685 |
| Monthly payment | $868 |
| Opened | Feb. 16, 2025 (4 mos) |
| Term | 73 months |

**Payment History**

You've made **100%** of payments for this account on time.

| | J | F | M | A | M | J | J | A | S | O | N | D |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2025 | | ✓ | ✓ | ✓ | | | | | | | | |

✓ Current ✗ Late

● Unknown ▲ Derogatory

Last payment No Info

For you Cards Loans Insurance Credit

# ATTATCHMENT K

Confidential

Santander Consumer USA

April 15, 2025

Marvin Jennings
13215 SE Mill Plain Blvd., C8-413
Vancouver, WA 98684

**Re: Marvin Jennings**
**Santander Account No.: ****8389**


©2025 Santander Consumer USA Inc. All rights reserved.

Confidential

Santander Consumer USA

April 14, 2025

**Sent Via First Class Mail**

Marvin Jennings
13215 SE Mill Plain Blvd., C8-413
Vancouver, WA 98684

**Re: Santander Account No.: ****8389**

Dear Marvin Jennings:

Thank you for taking the time to submit your correspondence. We appreciate the opportunity to review this matter and provide a response.

Our priority is to treat our customers with the utmost respect and fairness, and we are committed to responsible lending that adheres to all state and federal laws. We found no evidence that we violated your rights, or regulations mentioned in your request.

By receiving the application for credit, we had permissible purpose to investigate your credit history through the credit bureau to determine whether to approve your request for financing.

The Truth in Lending Act (TILA) Disclosures in the Contract show the amount that would be paid over the term of the Contract if all payments are made on time as scheduled. Any late payments, modifications, or extensions impact the total amount paid over the life of the account.

The following items impacted the amount you owe under the Contract:

Modification: Annual Percentage Rate (Lowered payments from $892.46 to $868.86, and lowered interest rate from 29.41% to 28.19%).

We reviewed your account and determined that the additional assertions made in your correspondence are invalid. If you believe there is an issue with the servicing of the account, please provide specific details or documentation so that we may address any legitimate concerns. By signing the Contract, you fully accepted the terms and conditions therein.

Santander does not accept security notes, promissory notes, treasury coupons, billing statements or the Contract as payment or payoff and will only accept valid legal monetary instruments in the form of United States currency for payments or payoffs. These include, but are not limited to personal checks, bank checks (certified funds) or money order.

We respectfully decline your request for compensation or to return tender, as a valid balance remains on the account.

Enclosed are copies of documents which validate the contractual obligation for the account, its status and balance owed.

P.O. Box 961245, Fort Worth, TX 76161-1245 • www.SantanderConsumerUSA.com • 888.222.4227
©2025 Santander Consumer USA Inc. All rights reserved.
***Serviced by Santander Bank, N.A.: www.SantanderConsumerUSA.com/servicer.**

Confidential

Santander Consumer USA

We have placed the account in a Cease-and-Desist status, and we will no longer contact you regarding the account. We may continue to send notices or correspondence as required by law.

If you have questions, please call us at 1-888-222-4227, Monday through Friday 7 a.m. to 6 p.m., Central Time.

Sincerely,

Santander Consumer USA Inc.

Enclosures:
Contract
Annual Percentage Rate Reduction

SEE IMPORTANT CONSUMER NOTICES AT THE END OF LETTER


©2025 Santander Consumer USA Inc. All rights reserved.

Confidential

Santander Consumer USA

**THIS COMMUNICATION IS FROM A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

**NOTICE:** TO THE EXTENT YOUR ORIGINAL OBLIGATION WAS DISCHARGED OR IS SUBJECT TO AN AUTOMATIC STAY OF BANKRUPTCY UNDER TITLE 11 OF THE UNITED STATES CODE, THIS IS FOR INFORMATIONAL PURPOSES ONLY AND DOES NOT CONSTITUTE AN ATTEMPT TO COLLECT A DEBT OR TO IMPOSE PERSONAL LIABILITY FOR SUCH OBLIGATION.

We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

**CALIFORNIA RESIDENTS:** The state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8:00 a.m. or after 9:00 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov.

**Notice of Credit Reporting:** As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit-reporting agency if you fail to fulfill the terms of your credit obligations.

**UTAH RESIDENTS:** As required by Utah law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligation.

P.O. Box 961245, Fort Worth, TX 76161-1245 • www.SantanderConsumerUSA.com • 888.222.4227
©2025 Santander Consumer USA Inc. All rights reserved.
***Serviced by Santander Bank, N.A.: www.SantanderConsumerUSA.com/servicer.**