IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MARVIN JENNINGS,

    Plaintiff,

v.

SANTANDER CONSUMER USA INC.,

    Defendant.

Case No. 3:25-cv-01052-AB

OPINION & ORDER

Marvin Jennings

    Self-represented

Robert E. Sabido
Sabido Law, LLC
8215 SW Tualatin Sherwood Road Suite 218
Tualatin, OR 97062

    Attorney for Defendant

1 – OPINION & ORDER

**BAGGIO, District Judge:**

Plaintiff Marvin Jennings, a self-represented litigant, brings this suit against Defendant Santander Consumer USA Inc. alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), violations of Oregon's consumer and trade practices laws, and unjust enrichment. Am. Compl. ¶¶ 31–36, ECF No. 10. Defendant moves to compel arbitration. Def.'s Mot. Compel Arbitration ("Def.'s Mot."), ECF No. 24. Plaintiff opposes Defendant's Motion and moves to strike the Declaration of Kelly M. Shumake filed by Defendant in support of its Motion. Pl.'s Opp'n Mot. Compel Arbitration ("Pl.'s Resp."), ECF No. 31; Pl.'s Mot. Strike Decl. of Kelly M. Shumake ("Pl.'s Mot. Strike"), ECF No. 33. For the following reasons, the Court grants Defendant's Motion to Compel Arbitration and denies Plaintiff's Motion to Strike.

## BACKGROUND

In February 2025, Plaintiff purchased a 2025 Chevrolet Trax from McLoughlin Chevrolet. Am. Compl. ¶ 8. To finance the purchase, Plaintiff entered into a Retail Installment Sales Contract. *Id.* ¶¶ 8–9; Am Compl. Ex. H, at 17–23;[1] Shumake Decl. Ex. A ("Contract"), ECF No. 25. The parties' underlying dispute turns on Plaintiff's allegations that by "adding a restrictive endorsement: 'IN TRUST'" Plaintiff converted the financial instrument into one "to be used solely for settlement and credit, not as a personal loan." Am. Compl. ¶ 9. Plaintiff also alleges that he "provided written notice of rescission" and that his "right of rescission is

---

[1] A version of the Retail Installment Sales Contract appears to be included in Plaintiff's Amended Complaint in Exhibit H. The exhibit itself does not have macro pagination; the Contract begins seventeen pages after the title page of Exhibit H, or page 72 using CM/ECF page numbers. The exhibit has blank pages inserted between each page, thus the four-page Contract spans seven pages in Exhibit H while only four pages in Shumake's Declaration Exhibit A. In addition, it appears that two of the four pages of the Contract are included in Plaintiff's Response as Exhibit A, found on pages 39–40 using CM/ECF page numbers.

2 – OPINION & ORDER

preserved as a right of recoupment under state law." *Id.* ¶ 11. Defendant moves to resolve these disputes in arbitration pursuant to the Contract's arbitration provision. Def.'s Mot.

## STANDARDS

"[A] contract evidencing a transaction involving commerce" is subject to the Federal Arbitration Act ("FAA"). 9 U.S.C. § 2. The FAA provides for a cause of action in United States district court for a party "aggrieved by the alleged failure . . . of another to arbitrate under a written agreement for arbitration . . . ." 9 U.S.C. § 4. "By its terms, the [FAA] 'leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'" *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985)). In this statutory scheme, "[t]he basic role for courts under the FAA is to determine '(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.'" *Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) (quoting *Chiron*, 207 F.3d at 1130).

## DISCUSSION

Defendant moves to compel arbitration, arguing that the parties are bound by an arbitration provision in their Contract. Def.'s Mot. Plaintiff opposes Defendant's Motion on myriad grounds. Pl.'s Resp.

### I.    Agreement to Arbitrate

There is no dispute that the parties entered into a contract with an arbitration provision. Am. Compl. ¶¶ 8–9; Def.'s Mot. 3; Pl.'s Resp. 10. Instead, Plaintiff contests the validity of the Contract as a whole, arguing that the initial contract Plaintiff signed had to be re-signed the

3 – OPINION & ORDER

following day due to missing signatures and that Defendant erroneously relies upon the initial, defective version. Pl.'s Resp. 9–10. It appears that the parties agree there were missing signatures in the initial batch of documents—on February 16, 2025—and that Plaintiff had to resign some documents on February 17, 2025. Pl.'s Resp. 9–10; Def.'s Reply 4 n.3, ECF No. 34. It is also not disputed that, ultimately, "Plaintiff signed [the] corrected documents . . . ." Pl.'s Resp. 10.

"There are two types of validity challenges under [FAA] § 2: 'One type challenges specifically the validity of the agreement to arbitrate,' and '[t]he other challenges the contract as a whole . . . .'" *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006)). "[O]nly the first type of challenge is relevant to a court's determination whether the arbitration agreement at issue is enforceable." *Id.* "Thus, a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate." *Id.*

Here, Plaintiff argues that Defendant's "Motion to Compel relies on documents Plaintiff never actually executed" and that "[u]nder basic contract law, an arbitration clause isn't enforceable if the document was defective . . . ." Pl.'s Resp. 10. Plaintiff is correct insofar as the contract in Defendant's declaration is dated February 16, 2025, which would correspond to the superseded batch of documents. Contract 4. However, because only challenges to the validity of the arbitration provision itself prevent forwarding the dispute to arbitration, Plaintiff's arguments are unavailing. *See Quiroz v. Cavalry SPV I, LLC*, 217 F. Supp. 3d 1130, 1136–37 (C.D. Cal. 2016) (rejecting the plaintiff's argument that he should not be bound "because he purportedly did not receive and sign the [relevant notice] and, therefore, the [agreements] were never 'formed'" because this challenge "does not go to the *existence* of the [agreement]; instead, it goes to the

4 – OPINION & ORDER

[agreement's] *validity*" and therefore is left for the arbitrator). Plaintiff does not contest the existence of the Contract; therefore, the Court finds an agreement to arbitrate.

## II.     Scope of Arbitration Agreement

Having found an agreement to arbitrate, the Court next turns to whether the Contract's arbitration agreement encompasses the dispute at issue.

"The question whether the parties have submitted a particular dispute to arbitration, *i.e.*, the '*question of arbitrability*,' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'" *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (quoting *AT&T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 649 (1986)). "[P]arties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center*, 561 U.S. at 68–69.

> Here, the Contract's arbitration provision reads:
>
> Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, any allegation of waiver of rights under this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this Vehicle, this contract or any resulting transaction or relationship . . . shall . . . be resolved by neutral, binding arbitration[.]

Contract 4. The provision, by stating "the arbitrability of the claim or dispute . . . shall . . . be resolved by neutral, binding arbitration[,]" clearly and unmistakably delegates questions of arbitrability. Thus, whether a particular issue is subject to arbitration is itself a matter for the arbitrator.

//

//

5 – OPINION & ORDER

### III.  Plaintiff's Remaining Challenges

Plaintiff argues that (1) Defendant's denials for "insufficient knowledge" in its Answer are binding; (2) Defendant waived arbitration by substantially invoking "litigation machinery"; (3) contract formation defects preclude arbitration; (4) the Shumake Declaration submitted in support of Defendant's Motion violates evidence rules regarding personal knowledge and hearsay; (5) Defendant, as a non-signatory to the contract, cannot compel arbitration; (6) FDCPA violations prevent arbitration; (7) Defendant does not discharge its burden under a clear and convincing standard; and (8) the Contract is unconscionable. Pl.'s Resp. The Court will address each in turn.

First, Plaintiff argues that statements in Defendant's Answer—such as "Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations, and on that basis, denies them"—are judicial admissions that cannot be squared with Defendant's instant motion seeking to enforce the contract. Pl.'s Resp. 3–5. While it is true that "[f]actual assertions in pleadings and pretrial orders . . . are considered judicial admissions conclusively binding on the party who made them[,]" *Am. Title Ins. Co. v Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988), Plaintiff's argument is unavailing because a party may obtain knowledge that it did not have at the time of its Answer. Here, Defendant pleaded insufficient knowledge of the arbitration agreement at one time and then later moved to compel arbitration on the basis of the agreement. Nothing in Defendant's Answer foreclosed the possibility of Defendant gaining knowledge of, and filing motions based upon, the arbitration agreement. *See* Fed. R. Civ. P. 8(b) (explaining that a statement that a party "lacks knowledge or information sufficient to form a belief about the truth of an allegation . . . has the effect of a denial[,]" and allegations that are denied are not admitted).

6 – OPINION & ORDER

Second, Plaintiff argues that Defendant waived its right to arbitrate by invoking "litigation machinery." Pl.'s Resp. 5–9. As an initial counter, Defendant argues that "the issue of waiver is for the arbitrator to decide" because the arbitration provision delegates questions of waiver to arbitration. Def.'s Reply 6. Defendant adds that even if the Court reaches the issue of waiver, Defendant did not substantially invoke litigation machinery. *Id.* at 6–7. The Court first evaluates whether the language in the instant contract clearly and unmistakably delegates issues of waiver by litigation conduct to the arbitrator. Finding that it does, the Court declines to reach Plaintiff's waiver argument.

"[T]he question whether a party waived its right to arbitrate on the basis of its litigation conduct is . . . presumptively for a court and not an arbitrator to decide." *Martin v. Yasuda*, 829 F.3d 1118, 1123 (9th Cir. 2016). "If the parties intend that an arbitrator decide [questions of waiver by litigation conduct], they must place clear and unmistakable language to that effect in the agreement." *Id.* at 1124. Indeed, "[i]n the Ninth Circuit, the burden of delegating arbitrability is particularly onerous where the party opposing arbitration claims waiver by litigation conduct." *Weber v. X Corp.*, No. 2:23-CV-0233-TOR, 2024 WL 470255, at *4 (E.D. Wash. Jan. 8, 2024) (collecting cases). Whether a particular arbitration agreement meets that burden is a fact-intensive—or more precisely, text-intensive—analysis. In *Martin*, the relevant arbitration provision read: "All determinations as to the scope, enforceability and effect of this arbitration agreement shall be decided by the arbitrator, and not by a court." 829 F.3d at 1120. The court found this language "insufficient to show an intent that an arbitrator decide the waiver by litigation conduct issue and to overcome the presumption . . . ." *Id.* at 1124. Likewise, in *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1117 (9th Cir. 2008), the Ninth Circuit found the language "[a]ny controversy . . . involving the construction or application of the terms,

7 – OPINION & ORDER

provisions, or conditions of this Agreement or otherwise arising out of or related to this Agreement shall likewise be settled by arbitration" to be insufficient to delegate the issue of waiver by litigation conduct to arbitration, *id.* at 1121.

Here, the contractual language—"any allegation of waiver of rights under this Arbitration Provision . . . shall . . . be resolved by neutral, binding arbitration"—is a closer call than *Martin* or *Cox.* Contract 4. Neither *Martin* nor *Cox* contained language that mentioned waiver of rights. But even when the language mentions "waiver," district courts in the Ninth Circuit are wary of finding delegation of questions of waiver by litigation conduct. In one case, the relevant clause read "the Arbitrator . . . will have exclusive authority to resolve disputes relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to, any claim that all or any part of this Agreement is void or voidable and pertaining to any waiver." *Armstrong v. Michaels Stores, Inc.*, No. 17-CV-06540-LHK, 2018 WL 6505997, at *7 (N.D. Cal. Dec. 11, 2018). The court held that the final "and" created ambiguity. *Id.* at *8. Under a literal reading, the court held, a claim only about waiver and not also about voidability would not be delegated to the arbitrator. *Id.*

The Court recognizes the high bar to delegate questions of waiver by litigation conduct to arbitration in the Ninth Circuit. *See Martin*, 829 F.3d at 1124. Nevertheless, the Court finds that the instant arbitration provision constitutes clear and unmistakable delegation. *See* Contract 4. The Court therefore does not reach the merits of Plaintiff's argument that Defendant waived arbitration by invoking litigation machinery.

Third, the Court has already addressed Plaintiff's argument regarding the allegedly defective initial February 16 contract and subsequent signing of the February 17 contract. As discussed above, this does not preclude arbitration. *See* Discussion, *supra* Section I.

8 – OPINION & ORDER

Fourth, Plaintiff challenges the Shumake Declaration filed by Defendant on multiple grounds, including lack of personal knowledge, hearsay, and chain of custody issues. Pl.'s Resp. 11–14. Plaintiff also moves to strike the Shumake Declaration. Pl.'s Mot. Strike. Because Plaintiff raises similar arguments in the Response and the Motion, the Court considers them together.

Plaintiff contends that the declarant's claim to "personal knowledge of . . . the business operations" and "review of Defendant's business records[,]" Shumake Decl. ¶ 2, "fails to establish first-hand knowledge" and thus violates Federal Rule of Evidence ("FRE") 602. Pl.'s Resp. 12; *see also* Pl.'s Mot. Strike 9–10. Plaintiff is mistaken. Personal knowledge "is not strictly limited to activities in which the declarant has personally participated" because "personal knowledge can come from review of the contents of files and records." *Wash. Cent. R.R. Co., Inc. v. Nat'l Mediation Bd.*, 830 F. Supp. 1343, 1353 (E.D. Wash. 1993); *see also Charles v. Portfolio Recovery Assocs., LLC*, No. 3:17-CV-0955-YY, 2018 WL 5660747, at *10 (D. Or. Aug. 1, 2018) (collecting cases), *report and recommendation adopted*, 2019 WL 722561 (D. Or. Feb. 20, 2019), *aff'd*, 2024 WL 1672350 (9th Cir. 2024).[2]

Next, Plaintiff argues that the Shumake Declaration is hearsay and the exhibits are not excused by the business records exception under FRE 803(6). Pl.'s Resp. 12–13; *see also* Pl.'s Mot. Strike 10–12. Specifically, Plaintiff argues that the declarant "did not create" these records, that the documents "span multiple entities[,]" and that "[e]ach entity's records require separate

---

[2] In his FRE 602 argument, Plaintiff attributes the following quote to *Martin v. Yasuda*, 829 F.3d 1118, 1125 (9th Cir. 2016): "Affidavits regarding assignment, standing, and enforcement must demonstrate first-hand, personal knowledge of every material assignment or endorsement. Generic claims of 'familiarity' or 'record review' are insufficient." Pl.'s Resp. 12. The Court was unable to locate this quote in *Martin* or other caselaw; it appears to be hallucinated authority.

9 – OPINION & ORDER

authentication from a qualified records custodian of that entity." Pl.'s Resp. 13. The Ninth Circuit has rejected this reasoning, holding that "[t]he business records exception only requires 'someone with knowledge' about the record-keeping, not necessarily an employee of the business or someone with knowledge of how the reports were made or maintained." *ABS Ent., Inc. v. CBS Corp.*, 908 F.3d 405, 426 (9th Cir. 2018). In addition, Plaintiff argues that "[n]o evidence establishes a proper foundation for the transfer of documents from the dealer to [Defendant]" and thus Defendant fails to assure chain of custody. Pl.'s Resp. 13. The Ninth Circuit has similarly rejected this line of reasoning: "A witness does not have to be the custodian of documents offered into evidence to establish Rule 803(6)'s foundational requirements." *United States v. Childs*, 5 F.3d 1328, 1334 (9th Cir. 1993).

In sum, Plaintiff's personal knowledge, hearsay, and chain of custody arguments do not undermine the Shumake Declaration. The Court not only rejects these arguments for purposes of adjudicating Defendant's Motion to Compel Arbitration but also denies Plaintiff's Motion to Strike on these grounds.

Fifth, Plaintiff argues Defendant, as a non-signatory to the Contract, "cannot lawfully compel arbitration in this case." Pl.'s Resp. 16. Plaintiff makes myriad allegations, including that "[t]he alleged arbitration agreement never names [Defendant] as a beneficiary" and that there is "no proof of assignment . . . ." *Id.* at 17. Plaintiff is both legally and factually incorrect.

The Ninth Circuit has "explained that 'nonsignatories of arbitration agreements may be bound by the agreement under ordinary contract and agency principles.'" *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) (quoting *Letizia v. Prudential Bache Sec., Inc.*, 802 F.2d 1185, 1187–88 (9th Cir. 1986)). "Among these principles are '1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel.'" *Id.* (quoting *Thomson–CSF,*

*S.A. v. Am. Arb. Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995)). The Court "look[s] to [state] contract law to determine whether [a nonsignatory] can compel arbitration." *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013).

Under Oregon law, "effective assignment does not require a specific form; it simply requires evidence that the assignor intended to assign the assignee a presently held interest." *Kaiser v. Cascade Cap. LLC*, No. 3:16-cv-00744-AC, 2017 WL 2405251, at *5 (D. Or. Mar. 27, 2017) (citing *In re Vaughn*, 38 Or. App. 29, 32, 588 P.2d 1295 (1979)[3]), *report and recommendation adopted*, 2017 WL 2991345 (D. Or. July 12, 2017). "An assignee of a contract containing an arbitration clause may be a proper party to invoke a right to arbitration." *Id.* at *4 (citing generally *Abbott v. Bob's U-Drive*, 222 Or. 147, 352 P.2d 598 (1960)).

Here, the Contract expressly provides for assignment, stating "Seller assigns its interest in this contract to Santander Consumer USA (Assignee) . . . ." Contract 4. This more than satisfies Oregon's requirement for intent to assign and thus permits Defendant to bring its Motion as a non-signatory.

Sixth, Plaintiff argues that Defendant's alleged violations of the FDCPA bar enforcement of the arbitration agreement. Pl.'s Resp. 19–20. However, the Ninth Circuit has affirmed a district court decision granting a motion to compel arbitration of FDCPA claims. *See Charles v. Portfolio Recovery Assocs., LLC*, No. 22-35613, 2024 WL 1672350, at *2 (9th Cir. 2024) (finding FDCPA claims arbitrable and affirming district court's decision to compel arbitration).[4] There is no categorical bar against arbitration for FDCPA claims.

---

[3] *Kaiser* names this case *Anderson v. Dep't of Justice* rather than *In re Vaughn*. It is the same case.
[4] Plaintiff cites three cases for the proposition that FDCPA violations bar enforcement of the arbitration provision: *Koch v. Compucredit Corp.*, 543 F.3d 460, 466 (8th Cir. 2008); *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1031 (9th Cir. 2010); *Kaiser v. Cascade Cap.*,

11 – OPINION & ORDER

Seventh, Plaintiff contends that Defendant "cannot meet the 'clear and convincing evidence' standard required to compel arbitration." Pl.'s Resp. 20–21. Plaintiff is mistaken. "[T]he party seeking to compel arbitration . . . bears 'the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence.'" *Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017) (quoting *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014)).

Eighth, in what Plaintiff fashions as an "alternative argument[,]" Plaintiff argues procedural and substantive unconscionability. Pl.'s Resp. 22–23. At the threshold, the Court must address whether unconscionability is properly an issue for the Court or the arbitrator when, like here, the arbitration agreement has a delegation provision. Where the plaintiff argues that "the *arbitration agreement as a whole* is substantively unconscionable" but does not "mention the delegation provision[,]" the plaintiff fails to overcome delegation. *Rent-A-Center*, 561 U.S. at 72–73. Thus, "a party resisting arbitration must mention that it is challenging the delegation provision and make specific arguments attacking the provision in its opposition to a motion to compel arbitration." *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1009, 1011 (9th Cir. 2023). That said, the rule is not that a party is "confined to the text of the delegation clause . . . ." *Holley-Gallegly v. TA Operating, LLC*, 74 F.4th 997, 1002 (9th Cir. 2023). Rather, a party may reference elements outside the delegation clause, but "if a party cites provisions outside of the delegation clause in making an unconscionability challenge, it must explain how those provisions make *the fact of an arbitrator deciding arbitrability* unconscionable." *Id.*

---

*LLC*, 989 F.3d 1127, 1131 (9th Cir. 2021). Neither *Donohue* nor *Kaiser* even mention the word 'arbitration.' *Koch*'s relevance is doubtful but in any event does not support Plaintiff's position—the *Koch* court remanded with direction to the district court to grant the motion to compel arbitration. 543 F.3d at 467.

The Court construes self-represented Plaintiff's unconscionability challenges as pressing upon elements that would make an arbitrator deciding arbitrability unconscionable and therefore reaches the merits of Plaintiff's unconscionability argument.[5] Under Oregon law, "[t]he party asserting unconscionability bears the burden of demonstrating that the provision in question is unconscionable." *Livingston v. Metro. Pediatrics, LLC*, 234 Or. App. 137, 151, 227 P.3d 796 (2010). "Unconscionability may be procedural or substantive. Procedural unconscionability refers to the conditions of contract formation and focuses on two factors: oppression and surprise." *Bagley v. Mt. Bachelor, Inc.*, 356 Or. 543, 555, 340 P.3d 27 (2014). "Substantive unconscionability, on the other hand, generally refers to the terms of the contract, rather than the circumstances of formation, and focuses on whether the substantive terms contravene the public interest or public policy." *Id.*[6]

With respect to procedural unconscionability, Plaintiff argues, among other things, that this was a "pre-printed contract of adhesion" with "no real opportunity to negotiate" as a "take-

---

[5] Plaintiff argues, among other things, that the delegation strips jury rights and favors repeat-users. Pl.'s Resp. 23; *cf. Kohler v. Whaleco, Inc.*, 757 F. Supp. 3d 1112, 1126 (S.D. Cal. 2024); *Lewis v. Cox Commc'ns Inc.*, No. CV-24-02326-PHX-SMB, 2025 WL 3897902, at *3 (D. Ariz. Aug. 20, 2025).

[6] Whether procedural and substantive unconscionability must both be shown or whether substantive unconscionability alone is sufficient is a question left open by the Oregon Supreme Court in its most recent articulation. *Bagley*, 356 Or. at 556 n.8 ("In some jurisdictions, courts require both procedural and substantive unconscionability before they will invalidate a contract . . . . This court has not addressed that issue, and because, as explained below, we conclude that both procedural and substantive considerations support the conclusion that the release here is unconscionable, we do not decide that issue in this case."). Thus, Defendant's citation of *Tapley v. Cracker Barrel Old Country Store, Inc.*, 448 F. Supp. 3d 1143, 1149 (D. Or. 2020) (citing *Chalk v. T-Mobile USA, Inc.*, 560 F.3d 1087, 1093 (9th Cir. 2009)) for the proposition that "only substantive unconscionability is absolutely necessary" is not a correct statement of law. Def.'s Reply 11; *see also Breslau v. Campbell*, 717 F. Supp. 3d 995, 1005 (D. Or. 2024) (describing potentially conflicting statements from Oregon appellate courts but relying on *Bagley* as the most recent statement from the highest court of the state). Because the Court finds neither procedural nor substantive unconscionability here, the Court does not weigh in on this open question.

13 – OPINION & ORDER

it-or-leave-it" contract, that "the arbitration clause was buried without separate disclosure," and that there was a "clear power imbalance . . . ." Pl.'s Resp. 22–23. Plaintiff's arguments are unavailing; the Court will address them in turn.

With respect to pre-printed take-it-or-leave-it contracts, the Ninth Circuit, in a case on appeal from the District of Oregon applying Oregon contract law, held that "[t]he take-it-or-leave-it nature of [an] agreement is insufficient to render it unenforceable." *Chalk*, 560 F.3d at 1094. Indeed, even when a contract "appears to be a pre-printed, 'take-it-or-leave-it' format . . . and likely not subject to negotiation, it is difficult for the Court to conclude that [the plaintiffs] did not have any bargaining power [when] there were other providers . . . with whom [the plaintiffs] could have chosen to contract." *Willis v. Nationwide Debt Settlement Grp.*, 878 F. Supp. 2d 1208, 1216 (D. Or. 2012). Similarly, here, Plaintiff does not, and likely could not, aver that McLoughlin Chevrolet is the only dealership with whom he could have chosen to contract. Thus, procedural unconscionability does not accrue, notwithstanding the pre-printed form.

Nor was the arbitration provision buried in the Contract. "Oregon courts have routinely rejected arguments of unfair surprise where arbitration agreements are not hidden but clearly expressed and set apart by boldface or italics in a contract." *Coredero v. Solgen Power LLC*, No. 3:23-cv-01701-MO, 2024 WL 5066061, at *4 (D. Or. Dec. 11, 2024) (citing *Sprague v. Quality Rests. Nw., Inc.*, 213 Or. App. 521, 526, 162 P.3d 331 (2007); *Gist v. ZoAn Mgmt., Inc.*, 305 Or. App. 708, 717, 473 P.3d 565 (2020); *Motsinger v. Lithia Rose-FT, Inc.*, 211 Or. App. 610, 616, 156 P.3d 156 (2007)). Here, the Contract was only four pages, and the second line of the Contract alerted the signer to the arbitration provision. Contract 1. In addition, Plaintiff was required to sign a box on the first page of the Contract alerting the signer that an "Agreement to Arbitrate" was "on page 4 of this contract . . . ." *Id*. Then, as page one foreshadowed, page four

14 – OPINION & ORDER

contained the arbitration provision, including a delegation provision, under a series of bolded statements, one of which at the top of the page read "ARBITRATION PROVISION | PLEASE REVIEW – IMPORTANT – AFFECTS YOUR LEGAL RIGHTS[.]" *Id.* at 4. The arbitration agreement was not buried.

Finally, a power imbalance is insufficient to discharge a plaintiff's burden to show unconscionability. Indeed, "unequal bargaining power . . . is not enough to invalidate an arbitration clause on the basis of unconscionability." *Motsinger*, 211 Or. App. at 617; *see also Willis*, 878 F. Supp. 2d at 1215 (citing *Motsinger*, 211 Or. App. at 615–17) ("[U]nequal bargaining power is insufficient to invalidate an arbitration clause without some evidence of deception, compulsion, or unfair surprise."). In sum, the Court does not find procedural unconscionability.

Moving to substantive unconscionability, Plaintiff argues that the arbitration provision is "grossly unreasonable" because it, among other things, "strips Plaintiff's constitutional right to a jury, limits discovery[, and] restricts remedies . . . ." Pl.'s Resp. 23. Plaintiff's contentions are features, not bugs, of the arbitral system. Indeed, "there is no right to a jury trial under the grievance and arbitration procedure, but that feature is hardly unconscionable—or, more precisely, if it were, virtually every system of alternative dispute resolution would be substantively unconscionable." *Hatkoff v. Portland Adventist Med. Ctr.*, 252 Or. App. 210, 220, 287 P.3d 1113 (2012); *see also Barackman v. Anderson*, 338 Or. 365, 371, 109 P.3d 370 (2005) ("When a party agrees to arbitration, the state has not deprived that party of a jury trial . . . ."). Plaintiff does not prevail on his substantive unconscionability argument.

//

//

15 – OPINION & ORDER

## CONCLUSION

The Court GRANTS Defendant's Motion to Compel Arbitration [24] and DENIES Plaintiff's Motion to Strike [33]. All other pending motions are DENIED as moot.

The Court STAYS proceedings pending arbitration. The parties shall file a joint status report every ninety (90) days with the Court. The first status report will be due ninety (90) days from this Opinion & Order. If arbitration concludes prior to the filing of the joint status report, the parties must notify the Court within seven (7) calendar days.

IT IS SO ORDERED.

DATED this  30th  day of January, 2026.

*Amy M. Baggio*
_____
AMY M. BAGGIO
United States District Judge

16 – OPINION & ORDER